# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN J. KORESKO,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | **No. 13-4131** |
| **Defendant.** | : | |

# M E M O R A N D U M

**Stengel, J.**                                                              **August 19, 2015**

John Koresko is the creator of the Regional Employers Assurance Leagues Voluntary Employees' Benefit Association (REAL VEBA) trust, which the IRS determined was a tax shelter. In November 2012, the IRS assessed 26 U.S.C. § 6700 penalties against both Koresko and Penn-Mont Benefit Services, the plan administrator, for their respective roles in promoting the REAL VEBA plan in 2003. As required by statute, Mr. Koresko and Penn-Mont paid a portion of their respective assessments. They then sued the United States in separate suits for a refund of the penalty they each paid— asserting that it was unwarranted, incorrect, or impermissible under several legal theories.[1]

The United States filed counterclaims, requesting the penalties be paid in full. The Government asserts six counts or reasons why the REAL VEBA scheme was not a legally permissible tax exemption vehicle. The United States moved for partial summary

---

[1] The action filed by Penn-Mont can be found at 13-cv-4130, E.D. Pa.

judgment on two of those bases. Specifically, the Government is asking this court to decide if the REAL VEBA scheme failed to comply with I.R.C. § 419A(f)(6) by: 1) not providing a fixed welfare benefit for a fixed coverage period (Count V), and 2) using non-standard triggers for paying benefits (Count VI).

For the reasons stated below, I will grant the Government's motion and find that the REAL VEBA scheme did not provide a fixed welfare benefit for a fixed coverage period and used non-standard triggers for payment of benefits.

## I.        BACKGROUND

### a.  REAL VEBA and affiliated entities

Mr. Koresko has practiced as an attorney since 1984 and a certified public accountant since 1981.[2]  He lives in Bridgeport, Pennsylvania.[3]  He is a "recognized expert in the fields of estate planning, benefits planning, and taxation" who "has provided advice and comments to committees of the U.S. Congress, the U.S. Treasury Department, the U.S. Department of Labor, and the U.S. Department of Justice regarding important tax issues."[4]  He has appeared before the U.S. Tax Court as an expert witness.[5]  He has

---

[2] Perez v. Koresko, et al., 09-cv-988 (E.D. Pa. March 6, 2009)(McLaughlin, J.)(hereinafter, "DOL (09-cv-988)"), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 1, ¶ 1; DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶ 1.

[3] Perez v. Koresko, et al., 09-cv-988 (E.D. Pa. March 6, 2009)(McLaughlin, J.)(hereinafter, "DOL (09-cv-988)"), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 1, ¶ 1; DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶ 1.

[4] Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund). See also Perez v. Koresko, et al., 09-cv-988 (E.D. Pa. March 6, 2009) (McLaughlin, J.)(hereinafter, "DOL (09-cv-988)"), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 2, ¶ 2.

[5] Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund).

authored chapters on estate planning and journal articles on employee benefits and tax law.[6]

The Regional Employers Assurance Leagues (REAL) is an "unincorporated, informal association of employers."[7] REAL "sponsor(s)" a Voluntary Employees' Benefit Association (VEBA).[8] "REAL VEBA is a trust, resulting from a combination of five VEBA trusts…"[9] and is controlled by four interconnected documents: the Master Trust Agreement, the REAL VEBA Plan Document, the REAL VEBA Adoption Agreement, and participation agreements with limited powers of attorney executed by each beneficiary.[10] Each of those five VEBAs received IRS determination letters in 1993 providing for tax exempt status under Section 501(c)(9).[11]

---

[6] Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund).

[7] Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund). See also In re: REAL VEBA Trust, No. 13–ap–16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 4, ¶ 16 ("These bankruptcy cases involve entities that collectively provide employee welfare benefit programs to small businesses that are members of the Regional Employers Assurance Leagues ('REAL' or the 'Leagues'). The Leagues are unincorporated associations of unrelated employers established and run by Mr. Koresko and others.").

[8] Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund).

[9] Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund).

[10] In re: REAL VEBA Trust, No. 13–ap–16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 9, ¶ 41 and Ex. A, B. See also In re: REAL VEBA Trust, No. 13–ap–16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at Ex. D (Participant Agreement and Limited Power of Attorney sample); DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 2, ¶¶ 29, 30; DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 12-13.

I note that the bottom of each page of the Health and Welfare Benefit Plan Document "Sponsored by: Penn-Mont Benefit Services, Inc." states "Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited." See In re: REAL VEBA Trust, No. 13–ap–16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at Ex. B.

[11] Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund). See also DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 2, ¶ 7; DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶ 18; DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 11.

"REAL VEBA was originally adopted on March 20, 1995 as a multiple employer VEBA, following consolidation of certain trusts originally known as the Delaware Valley Leagues [DVL], and it has operated successfully since that time."[12] The DVL and DVL VEBA became REAL VEBA.[13] The REAL VEBA was amended and reinstated on March 18, 2002.[14]

Penn-Mont Benefit Services (Penn-Mont) is a Pennsylvania corporation based in Bridgeport, Pennsylvania.[15] Penn-Mont is the settlor and administrator of the REAL VEBA Trust.[16] Mr. Koresko is the majority shareholder and director of Penn-Mont.[17] He

---

[12] In re: REAL VEBA Trust, No. 13–ap–16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 4, ¶ 19. See also DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 2, ¶ 8; DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 11.

See also In re: REAL VEBA Trust, No. 13–ap–16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 4, ¶ 19 ("In 2002, after the Internal Revenue Service ('IRS') promulgated new regulations relating to § 419A(f)(6)'s prohibition on experience rating, REAL VEBA was amended and restated to comply with those regulations."). The governing documents were also allegedly amended in 2009 as well. However, the amendment is not relevant to this action. See id. at 16, ¶¶ 69-71.

[13] See, e.g., DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 3, ¶ 25; DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶ 19.

[14] See In re: REAL VEBA Trust, No. 13–ap–16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at Ex A.

[15] In re: REAL VEBA Trust, No. 13–ap–16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 3, ¶ 8.

In various court documents, Penn-Mont is also referred to as PennMont. Though their spelling differs slightly, the two appear to refer to the same entity. For the sake of consistency, I refer to the entity as Penn-Mont.

[16] In re: REAL VEBA Trust, No. 13–ap–16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 3, ¶ 8 and at Ex. A (Master Trust Agreement). See also DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 2, ¶ 23 (explaining how PennMont is the "perpetual administrator" of the REAL VEBA).); DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 11-12. See also DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 35.

formed Penn-Mont in 1992.[18] Penn-Mont was set up so that Mr. Koresko's brother, who is not a lawyer, could have an equity participation.[19] Penn-Mont is a "nationally recognized employee benefits firm that offers design, installation, and administration of qualified retirement plans, VEBAS, and other welfare benefit arrangements" and "offers consulting and educational services to professional and closely held corporations and their financial planners, legal advisors, and accountants."[20]

Penn-Mont and the REAL VEBA are affiliated with several other entities set up by Mr. Koresko. Penn Public Trust (PPT) "is a Pennsylvania non-profit corporation based in Bridgeport, Pennsylvania."[21] Mr. Koresko founded and incorporated PPT.[22] Initially,

---

[17] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 3, ¶ 8. See also DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶ 3 ("I am the President of PennMont Benefit Services, Inc., a Pennsylvania Corporation ("PM") formed in 1992 by me.") and at ¶ 11 ("I am the sole director, 70% shareholder, and chief executive of the [PennMont], which is the plan administrator of REAL VEBA and SEWBT."); DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 92, ¶ 9.

[18] DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶ 3 ("I am the President of PennMont Benefit Services, Inc., a Pennsylvania Corporation ('PM') formed in 1992 by me.").

[19] DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 2, ¶ 14. See also DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶ 4 ("Lawrence Koresko is the Vice President of PennMont."); DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 12 (stating that John and Larry Koresko owned PennMont). However, according to Mr. John Koresko, Lawrence Koresko is not a trustee or officer of the entities involved in the DOL suit/REAL VEBA. See DOL (09-cv-988), Doc. No. 429 (July 8, 2013 Hr'g Tr.; Ex. 5 to the United States' motion), Tr. 78-81.

[20] Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund).

[21] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 3, ¶ 7. See also DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶ 13.

[22] DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶ 12.

PPT served as the Trustee.[23] In the mid-1990s, Penn-Mont appointed First Union

National Bank as custodial trustee and in 2002 Community Trust Company was

appointed custodial trustee.[24] "Mr. Koresko is the sole director, secretary treasurer [sic],

president, and counsel of PPT."[25]

Koresko & Associates, PC (KAPC) is a Pennsylvania professional corporation in

Bridgeport, Pennsylvania.[26] "Mr. Koresko is the sole shareholder and director of

[KAPC]."[27] Penn-Mont "is a corporate affiliate of KAPC."[28] Penn-Mont "has no

employees and no physical assets." [29] Penn-Mont "functions like a division of KAPC on

the premises of KAPC."[30] "All persons who perform administrative functions for REAL

---

[23] DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶ 14.

[24] See (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 2, ¶¶ 24, 25.

[25] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 3, ¶ 7.

[26] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 3, ¶ 9.

[27] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 3, ¶ 9. See also DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 2, ¶ 13 ("I am the sole shareholder of Koresko & Associates, PA (KAPC) the entity through which I practice law."); DOL (09-cv-988), Doc. No. 204 (Koresko's Answer to DOL's Complaint; Ex. 9 to the United States' motion), at 5, ¶ 10 ("Bonney does not control the operations of PennMont and/or KAPC in any regard, including trust accounts.").

[28] DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 2, ¶ 14.

[29] DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 2, ¶ 15.

[30] DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 2, ¶ 15. See also DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 2, ¶ 26 (explaining how CTC, the custodial trustee, took direction from PennMont meaning "CTC took direction from me [Mr. John Koresko] or my employees, Ms. Bonney, Mr. Lawrence Koresko, or Mr. Townsend."). I note that there were later changes in the trustee but those changes (which involve some areas of

VEBA are employees of KAPC, use assets of KAPC, and are instructed as to the mandates of attorney-client privilege."[31] "All files of DVL VEBA and REAL VEBA are owned by and in possession of the law firm KAPC."[32] KAPC was dissolved, and Koresko Law Firm was created as its successor.[33]

Koresko Law Firm (KLF) is a Pennsylvania corporation in Bridgeport, Pennsylvania.[34] "Mr. Koresko is the sole shareholder and director of KLF."[35] Mr. Koresko practices law through KLF.[36] He was the attorney in fact for the REAL VEBA Trust.[37] KLF employs another attorney and a handful of support staff.[38] KLF performed work for Penn-Mont in administering the REAL VEBA.[39]

---

dispute) do not concern this matter because they took place long after the 2003 tax year. See DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 3, ¶¶ 39-40; DOL (09-cv-988), Doc. No. 429 (July 8, 2013 Hr'g Tr.; Ex. 5 to the United States' motion), Tr. 92, 97, 135.92, 97, 135; DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion).

[31] DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 2, ¶ 16.

[32] DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 2, ¶ 17. See also id. at 3, ¶ 28 ("I have consistently treated KAPC, [PennMont], REAL VEBA, DVL, and DVL VEBA records as privileged.").

[33] See DOL (09-cv-988), Doc. No. 429 (July 8, 2013 Hr'g Tr.; Ex. 5 to the United States' motion), Tr. 197-98.

[34] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 3, ¶ 10.

[35] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 3, ¶ 10. See also DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶ 2; DOL (09-cv-988), Doc. No. 204 (Koresko's Answer to DOL's Complaint; Ex. 9 to the United States' motion), at 5, ¶ 10 (explaining how "Bonney does not control the operations of PennMont and/or KAPC in any regard, including trust accounts" and only "reviews documents prepared by staff in the operation of the subject trusts and welfare plans…").

[36] DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶ 2.

[37] See, e.g., DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 91, ¶ 9.

Mr. Koresko, Penn-Mont, PPT, KAPC, and KLF were also involved with setting up and managing a separate multiemployer trust called the Single Employer Welfare Benefit Plan Trust (SEWBP Trust) in 2002. This Trust is similar to the REAL VEBA and was also a party to other litigation involving the REAL VEBA. See In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 1-4, ¶¶ 6, 21-23.

The REAL VEBA was set up to be a special type of VEBA known as a ten or more employer or TOME plan.[40]

### b.  What are VEBAs

In 1928, Congress created a tax exemption for a type of trust called a "voluntary employees' beneficiary association" or VEBA. See I.R.C. § 501(c)(9). See also Neonatology Associates, P.A. v. Commissioner, 299 F.3d 221, 224 (3d Cir. 2002). VEBAs are a vehicle through which businesses can provide certain welfare benefits, such as life insurance, to their employees.  VEBAs adhering to appropriate IRS standards are exempt from federal income tax; the benefits they provide to their beneficiaries are not

---

[38] KLF also seems to employ one to two other non-attorney staff members. See DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶¶ 5, 6  ("Larry Townsend is an employee of KLF. Jeanne Bonney, Esquire is an attorney employed by KLF."); DOL (09-cv-988), Doc. No. 429 (July 8, 2013 Hr'g Tr.; Ex. 5 to the United States' motion), Tr. 17:15-25, 26:6-28:13 (discussing a Nancy Bonner, employee of Koresko Law Firm, who was an attorney but had been suspended for three years after being convicted of identity theft and forgery) and Tr. 158 (noting another employee of KLF Candace Anders).

[39] DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶¶ 5-10 (explaining how employees of KLF worked on REAL VEBA). See also DOL (09-cv-988), Doc. No. 429 (July 8, 2013 Hr'g Tr.; Ex. 5 to the United States' motion), Tr. 155-59 (Koresko and Koresko entities' attorney Bakker explaining how KLF, PennMont, and the REAL VEBA Trust work together, noting that the Trust is KLF's only client; Mr. Koresko confirms that the Trust is KLF's only client; DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at  66-67, ¶ 929.

[40] Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund).

taxed until the benefits are received. <u>See</u> I.R.C. § 501(a); Counterclaim, Doc. No. 17 at ¶ 9. Final regulations on VEBAs were published in 1981. T.D. 7750, 46 FR 1719-01 (Jan. 7, 1981).

In order to qualify as a VEBA, several requirements must be met. A VEBA must be separate from a participating employer and its employees' membership must be voluntary. 26 C.F.R. § 1.501(c)(9)–1, 2. Members of VEBAs must share "an employment–related common bond"—i.e. they all have the same employer, belong to the same trade union, or do the same type of work in the same geographic area. 26 C.F.R. § 1.501(c)(9)–1, 2, Treas. Reg. § 1.501(c)(9)–1, 2(a)(1). Deferred compensation benefits such as pension annuities or profit sharing are not permissible benefits which a VEBA could provide. <u>See</u> <u>Booth v. Commissioner</u>, 108 T.C. 524, 562-64 (1997). Benefits provided by a VEBA shall not be "discriminatory," meaning they shall not favor "highly compensated individuals."[41] 26 U.S.C. § 505(a), (b)(effective Jan. 1, 2002). No part of the net earnings of the VEBA can inure to the benefit of a private shareholder or individual except through the payment of benefits to VEBA participants. 26 C.F.R. § 1.501(c)(9)–4, Treas. Reg. § 1.501(c)(9)–4.[42]

---

[41] "Highly compensated individuals" include owners with a more than 5 percent stake in a company or who makes over $80,000 in the previous year and was in the top paid group of employees. 26 U.S.C. § 414(q).

[42] <u>See also</u> <u>In re: REAL VEBA Trust</u>, No. 13–ap–16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 6 (describing the necessary characteristics of a VEBA from Mr. Koresko's verified complaint).

### c. What are TOMEs

Deductions for VEBAs are typically limited to costs of current benefits for the current year or for limited prefunding of future years' benefits. I.R.C. § 419 and 419A. The Internal Revenue Code carves out an exception for VEBAs operating as "ten or more employer" (TOME) plans. If ten or more employers join a single plan, the restrictions in I.R.C. § 419 and 419A no longer apply. I.R.C. § 419A(f)(6). See also Notice 95–34, 1995–1C.B. 309, 310 ("In general, contributions to a welfare benefit fund are deductible when paid, but only if they qualify as ordinary and necessary business expenses of the taxpayer and only to the extent allowable under section 419 and section 419A of the Code. Those sections impose strict limits on the amount of tax-deductible prefunding permitted for contributions to a welfare benefit fund. Section 419A(f)(6) provides an exemption from section 419 and section 419A for certain welfare benefit funds.").

This portion of the Code was enacted in 1984 "to prevent employers from taking premature deductions for expenses which have not yet been incurred, by interposing an intermediary organization which holds assets which are used to provide benefits to the employees of the employer." H. Conf. Rept. No. 98–861, at 1155, U.S.Code Cong. & Admin.News 1984, p. 1843; Parker-Hannifin v. C.I.R., 139 F.3d 1090, 1100-01 (6th Cir. 1998); General Signal Corp. and Subsidiaries v. C.I.R., 103 T.C. 216, 243-44 (1994).[43]

---

[43] Sections 419 and 419A were enacted through the Deficit Reduction Act of 1984 (DEFRA). See Parker-Hannifin v. C.I.R., 139 F.3d 1090, 1094 (6th Cir. 1998); General Signal Corp. and Subsidiaries v. C.I.R., 103 T.C. 216, 230 (1994). See also In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 7 (describing enactment of sections 419 and 419A).

Congress was also concerned that welfare benefit plans such as VEBAs could serve as potential tax shelters. See Booth v. Commissioner, 108 T.C. 524, 565-66 (1997).

To be a TOME, a plan could not maintain "experience-rating arrangements with respect to individual employers." I.R.C. § 419A(f)(6)(A). See Booth v. Commissioner, 108 T.C. 524, 565 (1997). "The term 'experience-rated' means generally that premiums (contributions) are adjusted to reflect experience." See Booth v. Commissioner, 108 T.C. 524, 574 (1997). "The essence of experience rating is the charging back of employee claims to the employer's account." Id. at 575. When each employer's relationship to the trust is more akin to the relationship of an employer to a fund rather than an insurer to an insured, a VEBA is generally considered an experience-rating arrangement. See id.

In 1995, the IRS issued Notice 95-34 which offered guidance on when a multi-employer welfare benefits fund satisfied the requirements of being a TOME under section 419A(f)(6). See Schwab v. C.I.R., 136 T.C. No. 120, 122 (2011); Notice 95–34, 1995–1 C.B. 309, 310. Two years later, the Commissioner of the I.R.S. successfully challenged a multi-employer plan's reliance on section 419A(f)(6) by showing that it was really a series of single-employer plans. See Booth v. Commissioner, 108 T.C. 524, 1997 WL 328581 (1997). "In spite of Notice 95–34 and the Commissioner's litigation success, most taxpayers continued to take the position that their 419 plans were allowable under the Code." Schwab, 136 T.C. at 122. In 2000, the Commissioner issued Notice 2000–15, 2000–1 C.B. 826. This Notice, inter alia, designated 419 plans described in Notice 95–34 as "listed transactions" or "tax avoidance transactions." "Taxpayers are required to disclose listed transactions on their returns, and promoters of such transactions have to

11

register them with the IRS." <u>Schwab</u>, 136 T.C. at 122.

Finding that some taxpayers needed further clarity on whether 419 applied to their multi-employer plan, the IRS issued proposed regulations on section 419A(f)(6) plans in 2002, sec. 1.419A(f)(6)–1, Proposed Income Tax Regs., 67 Fed.Reg. 45938 (July 11, 2002). Final regulations on section 419A(f)(6) were issued in 2003. <u>See</u> <u>Benistar Employer Service Trust Co. v. U.S.</u>, No. 05-5679, 184 Fed.Appx. 93, 96 (2d Cir. 2006)("Benistar erroneously argues that there could be no intended violation of the Code with respect to welfare benefit plans prior to the issuance of Regulations in 2003, see 26 C.F.R. § 1.419A(f)(6)-1(c), as prior to that issuance, one could not know whether a plan met the carve out exception's criteria. The Tax Court's decision in <u>Booth v. Commissioner</u>, 108 T.C. 524, 1997 WL 328581 (1997)-a case cited by Benistar-is contrary: The IRS was prosecuting plans prior to the adoption of Regulations, and the fact that Regulations were eventually adopted to clarify the IRS's position does not mean that there could be no violation of the Code prior to the clarification."). These regulations stated that a plan is not considered to be a TOME plan if it exhibits any of the following characteristics:

> 1) each employers' assets are separately accounted for;
> 2) each employer is charged a different price and those different prices bear no relation to relative risks;
> 3) the plan does not provide a fixed welfare benefit for a fixed cost for a fixed timeframe;
> 4) the costs of the plan are unreasonably high compared to the risk; or
> 5) the benefits are paid by "non-standard benefit triggers," meaning benefits are transferred to participants for reasons other than illness, personal injury, death, or involuntary separation from employment.

26 C.F.R. § 1.419A(f)(6)–1 (c), Treas. Reg. § 1.419A(f)(6)–1(c).[44]

These final regulations were issued on July 26, 2003 and applied to the 2003 tax year.

If a VEBA plan does not comply with the provisions of the Internal Revenue Code and Treasury Regulations, the IRS may disallow an employer's deduction for contributions to the VEBA arrangement and the IRS may also treat the benefits paid from the VEBA as taxable income for beneficiaries. See Neonatology Associates, P.A. v. Commissioner, 299 F.3d 221, 233 (3d Cir. 2002); National Sec. Systems, Inc. v. Iola, 700 F.3d 65, 77 n. 7 (3d Cir. 2012).

### d.  Structure of the REAL VEBA

The REAL VEBA arrangement was structured in this way:[45]

1) Each employer executed an Adoption Agreement, which provided a death benefit for participating employees.

2) The amount of the death benefit was based on a multiple of the employee's compensation.

3) Each participating employee was required to sign a Participation Agreement which expressly authorized "the Attorney in Fact" to buy insurance for him or

---

[44] See also In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 7-8 (explaining how the 2003 regulations were promulgated to clarify the meaning of "experience-rating arrangements").

[45] See In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 12-16 (explaining the structure of the REAL VEBA arrangement).

her and to appoint Penn-Mont and Mr. Koresko to serve as Limited Attorney in Fact regarding the procurement of benefits.[46]

4)   The Trustee/PPT then purchased life insurance policies on the participating employees and retained ownership of those policies as the only named beneficiary.

5)   When the participating employee dies, the life insurance proceeds were then paid to the Trustee and deposited into the REAL VEBA Trust account.

6)   Penn-Mont then evaluated whether the participating employee's beneficiary was entitled to benefits based on a series of criteria outlined in the various REAL VEBA documents.

7)   Any surplus from the insurance policies was used for federal taxes, administrative expenses, and other costs associated with the Trust.

Allegedly, the REAL VEBA "did not make direct payments of benefits to participants other than that resulting from the proceeds of an insurance policy upon the occurrence of a triggering event, such as death."[47] It "was structured to satisfy Sections 419 and 419A, generally, and Section 419A(f)(6) specifically [which discussed TOMEs]."[48] The documents governing the REAL VEBA include a Master Trust Document and Adoption Agreements for each employer participating in the REAL

---

[46] See also DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 2, ¶¶ 29, 30.

[47] Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund).

[48] Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund). If it does not comply with Section 419A(f)(6), Koresko argues it complies, alternatively, with Section 419(a)(2). See id.

VEBA.[49] Each employee participant also signed a Participation Agreement.[50] Though the

employers were all considered participants in the REAL VEBA, which purported to be a

multi-employer Plan, each employer's assets were not pooled together into the Plan's res

but instead were kept in separate accounts.[51] Neither these accounts nor the employer's

adoption agreements were intended to create a "new Plan."[52] Each account was to be

credited and debited separately until it was exhausted.[53] Once exhausted, all other benefit

payments from an account would then be "charged against the remainder of the Trust

Fund by the Plan Administrator."[54] These accounts could be reallocated to comply with

the Code of ERISA.[55] The separate accounting of the VEBA assets was to comply with

Regulation 1.414(1)-1(b)(1), according to the Master Trust.[56] The Master Trust document

states that "it is intended that this Plan to qualify as a 10 or more Employer Plan as

---

[49] See Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund).

[50] See Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund). See also DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 2, ¶ 29.

[51] See Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund)(quoting the Master Trust Document, Sec. 4.4 Separate Accounting).

[52] See Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund)(quoting the Master Trust Document, Sec. 10.19 Multi-Employer Plan).

[53] See Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund)(quoting the Master Trust Document, Sec. 4.4 Separate Accounting).

[54] See Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund)(quoting the Master Trust Document, Sec. 4.4 Separate Accounting).

[55] See Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund)(quoting the Master Trust Document, Sec. 4.4 Separate Accounting).

[56] See Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund)(quoting the Master Trust Document, Sec. 4.4 Separate Accounting).

defined in Section 419A(f)(6) of the Code."[57] The REAL VEBA "was not an 'experience-rated' arrangement as a contributing employer did not receive the benefit of a favorable claims experience."[58]

According to the Master Trust and the complaint, the Plan is considered a Multi-Employer Plan which was not intended to be "an investment plan nor a deferred compensation plan."[59] The Plan Administrator's determination of account balances is considered "final unless deemed arbitrary and capricious by a court of competent jurisdiction."[60] Payment of benefits could be made "in the discretion of the Trustee."[61]

## II.   THE PROCEDURE OF THIS ACTION

On or about November 19, 2012, pursuant to 26 U.S.C. § 6700, the IRS issued a Notice of Penalty Charge to Mr. Koresko assessing a penalty of $386,000 under 26 U.S.C. § 6700 for promoting an abusive tax shelter in taxable year 2003.[62] On December 17, 2012, Mr. Koresko paid $57,900 or 15% of the penalty and filed a Claim for Refund of Tax Return Preparer and Promoter Penalties.[63] On July 16, 2013, Mr. Koresko filed

---

[57] See Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund)(quoting the Master Trust Document, Sec. 10.20 Ten or More Employer Plan).

[58] See Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund).

[59] See Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund)(quoting the Master Trust Document, Sec. 8.04).

[60] See Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund)(quoting the Master Trust Document, Sec. 10.19 Multi-Employer Plan).

[61] See Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund)(quoting the Master Trust Document, Sec. 5.04 Source of Benefits).

[62] See Compl., Doc. No. 1 at ¶ 6.

[63] See id. at ¶¶ 7, 8, Ex. A, B.

this action seeking a tax refund under 26 U.S.C. § 6703(c)(2).[64] He claims the civil

penalty is erroneous for several reasons: he cannot be considered a "promoter" within the

meaning of the statute; he lacked the requisite intent of knowing that his statements were

false; and the calculation of penalties is incorrect.[65] He seeks declaratory judgment that

he is not liable for these penalties, a refund with interest of the 15% already paid,

attorney's fees and costs.[66]

The Government answered Mr. Koresko's complaint and asserted a counterclaim

comprised of seven distinct violations of 26 U.S.C. § 6700 (Counts I through VII).[67] The

Government now moves for summary judgment on Counts V and VI of that

counterclaim.[68] According to the Government, the REAL VEBA arrangement was an

"abusive tax shelter." The REAL VEBA allowed business owners to purchase expensive,

---

[64] "Under section 6703 of the Code, the taxpayer can litigate the merits of the penalties in district court if the taxpayer (1) pays fifteen percent of the penalties, (2) files for a refund, and (3) is refused the refund claim (or six months passes from the date the taxpayer files)." Hankin v. U.S., 891 F.2d 480, 481 (3d Cir. 1989). The IRS will not collect the remainder of the assessment during the pendency of the proceedings. Id. (citing 26 U.S.C. § 6703 (1982)). Mr. Koresko has not indicated that he received a denial of his refund, so it appears this suit is timely. The Government does not raise any time-bar argument.

[65] Compl., Doc. No. 1 at ¶ 10.

[66] Compl., Doc. No. 1 at 4.

[67] The Government asserts the following seven Counts as violations of § 6700: 1) Count I: The REAL VEBA was not a Voluntary Employees' Beneficiary Association: 2) Count II: The REAL VEBA was not a single plan; 3) Count III: The REAL VEBA scheme discriminated among participants; 4) Count IV: The REAL VEBA scheme was a deferred compensation plan; 5) Count V: The Real VEBA scheme did not provide a fixed welfare benefit for a fixed coverage period; 6) Count VI: The REAL VEBA scheme used non-standard triggers for paying benefits; and 7) Count VII: The operations and earnings of the REAL VEBA scheme inured to the benefit of John Koresko.

[68] The Government previously moved to strike paragraph 10(f) of the plaintiff's complaint, which asserted a defense of laches. Doc. No. 10. I granted that motion. Doc. No. 12. The Government also moved to strike several of Mr. Koresko's defenses to their counterclaim. Doc. No. 28. I granted that motion in part and struck the following defenses as being legally insufficient: unclean hands, collateral estoppel, First Amendment, and violation of the bankruptcy stay provision. Doc. No. 30.

cash-value life insurance for themselves without treating that benefit as taxable income. Contributions to the REAL VEBA were then deducted from the businesses' taxable income and treated as a "business expense." The Government claims, in the alternative, that even if the business owners were not aware that this arrangement was an "abusive tax shelter," Mr. Koresko led them to believe it was lawful as a way to defraud them. Either way, the Government claims that Mr. Koresko made statements about the lawful nature of the REAL VEBA which he knew or should have known were false or fraudulent. Under § 6700, the Government argues he would be liable for civil penalties.

### III.   EVIDENTIARY CONSIDERATIONS AND OTHER LITIGATION

No discovery has been taken in this case. Because the details of the REAL VEBA have been thoroughly litigated in other federal courts, the Government has asked that admissions by Mr. Koresko from those cases be used to establish the facts in this case.

Mr. Koresko, Penn-Mont, and the REAL VEBA are no strangers to federal litigation. Currently, there are over 100 cases pending in United States Tax Court regarding the REAL VEBA's validity.[69] Mr. Koresko was the attorney of record in those cases.[70] Numerous other cases involving the REAL VEBA are also pending in this

---

[69] See Compl., Doc. No. 1 at ¶ 10(b).

[70] See Compl., Doc. No. 1 at ¶ 10(b). Mr. Koresko is currently suspended from practicing as an attorney in Pennsylvania and in this district. See Koresko v. Office of Disciplinary Counsel of the Disciplinary Board of the Supreme Court of Pennsylvania, No. 14–1154, 2015 WL 1312269, (E.D. Pa. Mar. 23, 2015); ODC v. John Koresko, 119-DB-2013 (Pa. Supreme Ct. Aug. 28, 2013); 13-mc-294, Doc. No. 37.

He was originally represented by counsel in this matter. However, his counsel moved to withdraw with Mr. Koresko's consent. Doc. No. 20. I granted this motion because the plaintiff had consented to the withdrawal and was supposed to secure new counsel. Id.; Doc. No. 21. Almost a month later, Mr. Koresko asked for the court to reconsider the Order allowing counsel to withdraw, claiming he opposed the withdrawal. Doc. No. 22. I denied his

district. See Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary

Association Trust v. Castellano, No. 03–6903; Neste v. General American Life Insurance

Company, No. 09–4581; Single Employer Welfare Benefit Plan Trust v. MIDA, Inc., No.

10–1921; Langlais v. Penn-Mont Benefit Services, Inc., No. 11–5275; Larkin v. Penn

Public Trust, No. 11–7421; Sharkey v. Penn. Public Trust, No. 12–1166; Regional

Employers' Assurance Leagues Voluntary Employees Beneficiary Trust v. O'Brien, No.

12–2207; Oswood v. Penn Public Trust, No. 13–666; Sun Life Assurance Company of

Canada v. Morton, No. 13–1088; Koresko v. Office of Disciplinary Counsel of the

Disciplinary Board of the Supreme Court of Pennsylvania, No. 14–1154; In re: REAL

VEBA Trust, No. 14–1484 (bankruptcy); In re: Koresko Law Firm, P.C., No. 14–1485

(bankruptcy); In re: Single Employer Welfare Benefit Plan Trust, No. 14–1486

(bankruptcy); In re: Penn-Mont Benefit Services, Inc., No. 14–1487 (bankruptcy); In re:

Koresko & Associates, P.C., No. 14–1488 (bankruptcy); In re: Penn Public Trust, No.

14–1489 (bankruptcy); Kalan v. Koresko Financial, No. 14–5216; Croushore v.

American General Life Insurance Cos., No. 14–5271; Mohsseni v. Western Reserve Life

Assurance Co. of Ohio, No. 14–5285; Erdman v. American General Life Insurance Cos.,

No. 14–5286; Spokane v. Nationwide Life Insurance Co., No. 14–5287; Gilcrease v.

American General Life Insurance Cos., No. 14–5288.[71]

---

motion for reconsideration. Doc. No. 26. Mr. Koresko has not obtained new counsel and has been proceeding *pro se* since.

[71] See also Real Employers' Assurance Leagues Voluntary Employees' Beneficiary Trust v. Schlossberg, et al., 05-cv-6126 (E.D. Pa. Nov. 23, 2005)(dispute between employer with the REAL VEBA over payment of death benefits and purported breach of contractual and/or fiduciary duties, resolved by settlement on February 7, 2007); Chao v. Koresko, et al., 04-mc-74 (E.D. Pa. Apr. 19, 2004)(petition to enforce DOL's administrative subpoena); Chao v.

### a.  DOL Litigation against Mr. Koresko and the REAL VEBA

The Department of Labor also brought an action against Mr. Koresko, his Koresko Law Firm legal associate Jeanne Bonney, Esq., the REAL VEBA Trust, the Single Employer Welfare Benefit Plan (SEWBP) Trust, Penn Public Trust, Penn-Mont, Koresko Law Firm, and Koresko Associates. The DOL claimed violations of ERISA related to REAL VEBA. Judge McLaughlin handled that litigation, held a bench trial, and made several findings of fact about how the REAL VEBA was structured. See Solis v. Koresko, et al., 884 F.Supp.2d 261 (E.D. Pa. 2012)(granting partial summary judgment in favor of the Department of Labor); Perez v. Koresko, et al., ---F.Supp.3d---, No. 09–988, 2015 WL 505471 (E.D. Pa. Feb. 6, 2015)(judgment post bench trial in favor of DOL), judgment amended, 2015 WL 2236692 (E.D. Pa. May 13, 2015)(altering judgment award). The issues in this case overlap with those in Judge McLaughlin's case. The penalties assessed in the Government's counterclaim under the Internal Revenue Code, however, are separate and distinct from those assessed under ERISA.

When that case was first filed on March 6, 2009, Mr. Koresko served as counsel for all the defendants. He continued to serve as counsel of record for the defendants until August 1, 2012 when Montgomery, McCracken, Walker, & Rhoads entered an

---

Koresko, et al., 06-mc-192 (E.D. Pa. Oct. 12, 2006)(petition to enforce DOL's second administrative subpoena); In re: Penn-Mont Benefit Services, Inc., et al., No. 13-bk-5986, 2013 WL 6405046 (Bankr. M.D. Fla. Dec. 6, 2013)(bankruptcy matter later transferred to E.D. Pa. because of ongoing ERISA litigation); Sheffield Distributing Co. v. United States, No. 09-40-LGW (S.D. Ga. Apr. 9, 2009)(tax refund case brought on behalf of REAL VEBA participants by Koresko and the Trust); RAM Technical Services, Inc. v. Koresko, 2005 WL 6358783 (Ore. Sep. 22, 2005); Thomas Walter Umphrey, P.C. v. PennMont Benefit Services, Inc., No. 1:12–cv–00355–MAC (E.D. Tx. Jul. 15, 2013); Bogatay Trust of 2000 v. PennMont Benefit Services, Inc., No. 13–cv–0700 (D. Ore.); Wilhite v. Regional Employers' Assurance Leagues Veba Trust, No. 11–59 (S.D.Tex. Feb. 9, 2012).

appearance on behalf of the defendants.[72] On the morning of July 8, 2013, Montgomery McCracken notified Judge McLaughlin that the firm intended to withdraw as counsel for the defendants; their motion to withdraw was granted on July 31, 2013.[73] On October 4, 2013, Judge McLaughlin approved retention of Dilworth Paxson as counsel for the defendants.[74] Dilworth has continued to serve as defense counsel in the DOL case.

The Government provides six filings from the DOL case:

1) a brief authored by Mr. Koresko on his own behalf appealing Judge McLaughlin's decision to grant partial summary judgment for the DOL (Ex. 2);

2) a May 4, 2004 sworn affidavit of Mr. Koresko in support of the defendants' response to the DOL's petition to enforce an administrative subpoena regarding REAL VEBA (Ex. 3);

3) an August 13, 2009 sworn affidavit of Mr. Koresko with a 2009 amendment to the REAL VEBA Trust and SEWBP Trust (Ex. 4);

4) a transcript from the July 8, 2013 Temporary Restraining Order hearing regarding the DOL case and three other cases between the REAL VEBA entities and participants, including the Castellano case discussed below (Ex. 5);

---

[72] See Perez v. Koresko, et al., No. 09–988, Doc. No. 310-313. See also Perez v. Koresko, et al., --- F.Supp.3d ----, No. 09–988, 2015 WL 505471, at 3 n.10 (E.D. Pa. Feb. 6, 2015).

[73] See Perez v. Koresko, et al., No. 09–988, Doc. No. 423-25, 456. See also Perez v. Koresko, et al., --- F.Supp.3d ----, No. 09–988, 2015 WL 505471, at 6 and 6 n. 14 (E.D. Pa. Feb. 6, 2015).

[74] See Perez v. Koresko, et al., No. 09–988, Doc. No. 538; Perez v. Koresko, et al., --- F.Supp.3d ----, No. 09–988, 2015 WL 505471, at 8 (E.D. Pa. Feb. 6, 2015).

5) proposed findings of fact and conclusions of law in opposition to a preliminary injunction offered by Mr. Koresko for himself and the other defendants and authored by Mr. Koresko in his capacity as an attorney (Ex. 6); and

6) the defendants' answer to DOL's complaint, authored by Mr. Koresko on his own behalf and as attorney for the other defendants (Ex. 9).

Mr. Koresko signed the affidavits in his capacity as a licensed attorney. Each of the pleadings or briefs authored by Mr. Koresko are signed by him as "John J. Koresko, V" and include his title as an Esquire and/or his Pennsylvania attorney license I.D.

**b. Adverse Proceeding related to REAL VEBA Bankruptcy**

The Government also provides Mr. Koresko's "verified complaint" with supporting exhibits from an adversary bankruptcy proceeding requesting a stay in the DOL case (Ex. 1). See Real Employers' Assurance Leagues Voluntary Employees' Beneficiary Trust v. Perez, et al., 13-ap-415 (Bankr. E.D. Pa. Jul. 30, 2013). This verified complaint was prepared by counsel from Hangley Aronchick Segal Pudlin & Schiller who represented the REAL VEBA Trust, Penn-Mont (PMBS), the Single Employer Welfare Benefit Plan (SEWBP) Trust, Penn Public Trust, Koresko & Associates, and the Koresko Law Firm. However, the complaint included a signed "verification" by Mr. Koresko as "sole director, the secretary treasurer, the president, and counsel of Penn Public Trust, which is the trustee of REAL VEBA Trust; the sole shareholder and director and the president of Penn-Mont Benefit Services, Inc., the settlor of REAL VEBA Trust and SEWBP Trust and their Plan Administrator; the sole shareholder and director of Koresko & Associates, P.C.; and the sole shareholder and director of Koresko

Law Firm, P.C." This "verification" stated that "the facts contained therein are true and correct to the best of my knowledge, information and belief" and that "the statements made herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities." The verified complaint also included copies of the REAL VEBA Trust's governing documents.

### c.  Other Litigation against the REAL VEBA

Lastly, the Government offers two documents from <u>Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Association Trust v. Castellano</u>, No. 03–6903 (E.D. Pa.), a case before Judge McLaughlin in which Penn-Mont, as administrator of the REAL VEBA brought a declaratory judgment action against a REAL VEBA beneficiary. In <u>Castellano</u>, Penn-Mont asked the court to declare that it was not required to pay the death benefit to Ms. Castellano after her husband passed away. The Government submits from <u>Castellano</u> excerpts from the REAL VEBA's statement of facts in support of its supplemental motion for summary judgment (Ex. 7), Mr. Koresko's revised response to plaintiff's statement of facts (Ex. 7), and a transcript from the August 25, 2009 deposition of Mr. Koresko (Ex. 8). The statements of facts were filed and signed by Mr. Koresko as attorney for the plaintiff/counter-defendants. Mr. Koresko's deposition was taken after he was duly sworn.

### d.  Use of Koresko's Statements in Other Litigation Documents

Mr. Koresko's admissions on other cases related to REAL VEBA likely are admissible as evidence. <u>See</u> <u>Mangual v. Prudential Lines, Inc.</u>, 53 F.R.D. 301, 302-303 (E.D. Pa. 1971)("In a civil case a pleading, or allegation therein, when amended,

23

withdrawn, or superseded by a substitute pleading, ceases to be usable as a conclusive judicial admission, but is admissible in evidence in the case in which filed at the instance of the adversary as an evidentiary admission. (Citations omitted).")(quoting Charles T. McCormick, Law of Evidence (West 1954 ed.), Ch. 27, § 242, p. 510)); Enterprise Rent-A-Car Wage & Hour Empl. Practices Litig. v. Enter. Rent-A-Car Co., 735 F. Supp. 2d 277, 330, fn. 18 (W.D. Pa. 2010)("A judicial admission is binding upon the party making it; it may not be controverted at trial or on appeal. Included within this category are admissions in the pleadings in the proceeding, stipulations and admissions pursuant to request to admit.... Ordinary evidentiary admissions, on the other hand, may be controverted or explained by the party. Within this category fall pleadings in another proceeding, superseded or withdrawn pleadings in the same proceeding, answers to interrogatories, as well as other statements admissible under [Federal Evidence] Rule 801(d)(2).")(quoting Hon. Barry Russell, Bankruptcy Evidence Manual, § 801:22 at 1507-08 (West 2008 ed.)).[75]

Unequivocal admissions by an attorney, clearly acting within the scope of his authority, are binding on his client. See, e. g., Glick v. White Motor Company, 458 F.2d

---

[75] See also Kohler v. Leslie Hindman, Inc., 80 F.3d 1181, 1185 (7th Cir. 1996)("[A] statement made in one lawsuit cannot be a judicial admission in another. … It can be *evidence* in the other lawsuit, but no more." (citations omitted)(emphasis in original)); Fidelity & Deposit Co. of Maryland v. Hudson United Bank, 653 F.2d 766, 777 (3d Cir. 1981)("We note that we are not concerned here with a 'judicial admission,' which involves a concession on the part of one party that a proposition of fact alleged by an opposing party is true, see 4 Wigmore, Evidence s 1058 (Chadbourn ed. 1972), and which is binding in the action in which it is made….Instead, we are concerned with a statement made by the Bank in connection with other litigation that is adverse to, or inconsistent with, its position in this case. As such, the answer to the interrogatory, although not conclusive, is admissible as evidence against the Bank to be weighed with all the other evidence by the trier of fact.")(citations omitted); In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation, 681 F.Supp.2d 141, 180 (D.Conn. 2009)("When a corporate party responds to an interrogatory using a declaration made by an employee or agent within the scope of her authority, that declaration is considered to be an admission by the corporation and is not treated as hearsay by a third party.")(citing Mangual).

1287, 1291 (3d Cir. 1972); Rhoades, Inc. v. United Air Lines, Inc., 340 F.2d 481, 484 (3d

Cir. 1965);  AMC Technology, L.L.C. v. SAP AG, No. Civ.A.05-CV-4708, 2005 WL

3008894, at 11 n. 17 (E.D. Pa. Nov. 3, 2005). See also U.S. v. Freeman, 519 F.2d 67, 70

(9th Cir. 1975); United States v. Dolleris, 408 F.2d 918, 921 (6th Cir. 1969), *cert. denied*,

395 U.S. 943 (1969); State Farm Mut. Auto Ins. Co. v. Porter, 186 F.2d 834, 841 (9th

Cir. 1950). Such admissions may be received in evidence, even if they are hearsay, under

the admissions exception to the hearsay rule. FED. R. EVID. 801(d)(2)(D).

I will consider the information contained in the pleadings and documents put forth

by the Government in deciding this motion for summary judgment as undisputed.[76] Each

---

[76] Other considerations, not raised by the Government, also warrant the use of these materials. "Judicial estoppel, sometimes called the 'doctrine against the assertion of inconsistent positions,' is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996). Courts have "uniformly recognized that its purpose is 'to protect the integrity of the judicial process,'…by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001)(citations omitted). When invoking judicial estoppel, a court should consider whether the party's later position is "clearly inconsistent" with its earlier position, whether the party persuaded the court with earlier inconsistent arguments, and whether the party would derive an unfair advantage by taking an inconsistent position. Id. at 750-51. Mr. Koresko has repeatedly been non-compliant. He has failed to participate in court hearings and his DOL trial before Judge McLaughlin. See DOL (09-cv-988), Doc. No. 429 (July 8, 2013 Hr'g Tr.; Ex. 5 to the United States' motion), Tr. 8-12, 14-15, 20-25 (failing to participate in a preliminary injunction hearing); id. at 37-39 (failing to comply with court ordered production of documents). Mr. Koresko has also failed to comply with discovery in the DOL case, including the taking of his deposition. See DOL (09-cv-988), Doc. No. 429 (July 8, 2013 Hr'g Tr.; Ex. 5 to the United States' motion), Tr. 8-12 (discussing how Mr. Koresko indicated health problems affected his ability to appear before Judge McLaughlin but was able to fly to Columbus for a mediation during the same period) and 83 ("MR. KORESKO: I took a private jet so that I could lie down with earphones on and eye pads on because I was ordered to be there in connection with a patent infringement suit that had been going on for seven years. It was a non confrontational meeting that was not in the nature of a confrontation situation like a deposition or like a court proceeding as we're having right now."). He made numerous  attempts to prolong that litigation. He has exhibited similar behavior in this litigation. To allow him to make statements in other cases in this district but then offer different interpretations about how the REAL VEBA operated or was intended to operate "would most flagrantly exemplify that playing 'fast and loose with the courts' which has been emphasized as an evil the courts should not tolerate." Scarano v. Central R. Co. of N.J., 203 F.2d 510, 513 (3d Cir. 1953).

Furthermore, Federal Rule of Civil Procedure 11(b) requires that representations made to the court in a "pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that [the information] is not being presented for any improper purpose…the claims, defenses or other legal contentions are warranted by existing law…the factual contentions have evidentiary support…and the denials of factual contentions are warranted…" FED. R. CIV. P. 11(b). The materials offered by the

of the pleadings was signed by Mr. Koresko on his own behalf as an attorney. They would serve as admissions to which he is bound. The other documents or transcripts involve statements made by Mr. Koresko on his own behalf while under oath. I must accept them as true.

## IV. GOVERNMENT'S UNDISPUTED FACTS

The Statements included in this section are either facts taken from the documents offered by the Government or quotes from those documents made by Mr. Koresko on his own behalf, as an attorney, or acting as an agent of REAL VEBA.[77] Under these circumstances, I will consider them to be undisputed.

### a. John Koresko's Involvement with and/or Participation in the REAL VEBA Arrangement

John J. Koresko and his brother Lawrence created REAL VEBA.[78] Mr. Koresko wrote all of the plan and trust documents for the REAL VEBA.[79] The REAL VEBA arrangement purported to "provide employee welfare benefit programs to small businesses that are members of the Regional Employers Assurance Leagues ('REAL' or

---

federal government to support their motion have either been signed by Mr. Koresko in his personal capacity, in his capacity as an attorney, or in his capacity as an agent of PennMont. Federal Rule of Civil Procedure 1 also requires me to construe and administer the federal rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1. In light of Mr. Koresko's behavior in this case and other litigation and his duty to make accurate and honest legal representations under Rule 11, I also believe the use of statements from his previous pleadings and affidavits in other litigation permissible. It is also necessary to adjudicate this matter in an efficient manner.

[77] For the sake of clarity I may repeat information already presented above.

[78] Doc. No. 29, Ex. 2, at 16 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief)).

[79] DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 2, ¶ 3; Id., Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶ 20. See also DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶¶ 14, 20.

the 'Leagues')."[80] Mr. Koresko negotiated or otherwise participated in the purchase of assets, specifically condominium units in Nevis, for the REAL VEBA Trust on behalf of the REAL VEBA arrangement.[81]

Each participant in the REAL VEBA was required to execute a Participation Agreement giving Penn-Mont and Mr. Koresko a "limited and irrevocable Power of Attorney to execute all documents in connection with the Plans, failure to execute the documents results in a participants' inability to receive the unsecured promise of a death benefit."[82] "John Koresko is the attorney in fact for the Plan and Trust pursuant to the Plan and Trust documents.[83] He has a power of attorney executed by every individual personally.[84] He exercises power of attorney for every Trust policy and asset."[85] Koresko

---

[80] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 4, ¶ 16.

[81] DOL (09-cv-988), Doc. No. 429 (July 8, 2013 Hr'g Tr.; Ex. 5 to the United States' motion), Tr. 59:15-63:20, 118, 120-23. See also id. at 191 (Mr. Koresko discussing an investment in property in South Carolina also).

[82] DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 15, ¶ 27. See also DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 2, ¶ 30 ("The Participation Agreements contain IRREVOCABLE POWERS OF ATTORNEY naming me and PM as attorney in fact with respect to all matters relevant to insurance contracts and benefit matters."); DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 2, ¶ 9.

See also In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at Ex. B (Health and Welfare Plan Document § 10.21)("Limited Power of Attorney- By Adopting this Plan, the Employer hereby appoints the Administrator, Trustee, or their delegate its attorney in fact with respect to all questions, controversies, and issues relating to the Plan before the Internal Revenue Service and Department of Labor. This power of attorney is irrevocable.").

[83] See, e.g., DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 37.

[84] See DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 2, ¶ 9.

[85] DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 91-92, ¶ 9. See also Ex. 3 (May 4, 2004 Affidavit of John Koresko), p. 2, ¶¶ 9-10 ("9. In the plan documents of DVL VEBA and REAL VEBA, my law firm was given power of attorney by each participant to represent them with

27

is also "the designated Secretary of each plan committee formed under the individual plans that are established in connection with REAL VEBA…."[86] Koresko is on the Plan Committee of each plan within the REAL VEBA and "[has] the power to act for the Committee."[87]

Penn-Mont, a Pennsylvania corporation owned by Mr. Koresko and his brother, is the named Plan Administrator for REAL VEBA.[88] Mr. Koresko formed Penn-Mont, was its sole and/or majority shareholder, and served as its director and President.[89]

---

respect to tax and other matters concerning DVL and REAL VEBA. 10. My law firm also has power of attorney from the present trustee of REAL.") and ¶ 13 ("I am the sole shareholder of Koresko & Associates, PC (KAPC) the entity through which I practice law.").

[86] DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶ 10.

[87] DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 2, ¶ 11. See also DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 14-15, ¶ 26.

[88] DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 12, ¶ 7. See also DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 2, ¶ 5 ("My brother and I are the only persons who have signed documents or taken actions on behalf of DVL and REAL, and we report to no superiors in that regard.").

[89] See DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 92, ¶ 9 (citing Deposition of John Koresko); In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 3, ¶ 8; Doc. 29, Ex. 2, at 16 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief); DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶¶ 3, 11.

See also Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Association Trust v. Castellano, et al., 03-cv-6909 (E.D. Pa. December 29, 2003)(McLaughlin, J.)(hereinafter, "Castellano (03-cv-6903)"), Doc. No. 249 (excerpt from Castellano's Supplemental Statement of Facts in Support of Summary Judgment based on Koresko Deposition from August 25, 2009 78:3-79:3; Ex. 7 to the United States' motion), at 3, ¶ 22; Koresko's Revised Opposition to Castellano's Supplemental Statement of Facts (Doc. No. 264), Ex. 7, at 10, ¶ 22 ("Penn-Mont is a Pennsylvania corporation formed by Koresko. Koresko serves as majority owner, director, and president."); REAL VEBA Trust, by PennMont Benefit Services, Inc., et al., v. Sidney Charles Markets Inc., et al., No. 01-4693, 2006 WL 2086761, at *1 n. 3 (E.D. Pa. Jul. 21, 2006)(Sanchez, J.)("The League, the League VEBA, the Plan Trustee and the Plan Administrator are all creatures of John Koresko. John Koresko is the incorporator and president of Penn-Mont Benefit Services Inc.")(Mr. Koresko cited to this case in making his admissions in Castellano).

"[P]articipating employees appointed [Penn-Mont], the present Plan Administrator, and Mr. Koresko, secretary of any Plan committee, 'to serve as Limited Attorney in Fact with respect to all matters connected with any and all matters relating to the procurement and maintenance of benefits payable to Employee pursuant to REAL VEBA and the Employer's Welfare Benefit Plan.'"[90] "[I]t is clear from REAL VEBA's governing documents that Penn-Mont has broad authority to administer REAL VEBA, and take any and all actions related to the Plan on behalf of the League, including amending REAL VEBA's governing documents."[91]

According to Mr. Koresko, the REAL is an unincorporated, loose association of employers wishing to provide welfare benefits.[92] None of the employers or employees who joined REAL controlled it.[93] Instead, Mr. Koresko and his brother controlled the REAL.[94]

---

[90] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 13, ¶ 55.

[91] Doc. No. 29, Ex. 2, at 15 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief)).

[92] Ex. 3 (May 4, 2004 Affidavit of John Koresko), at 2, ¶ 4.

[93] Ex. 3 (May 4, 2004 Affidavit of John Koresko), at 2, ¶ 4.

[94] See Doc. No. 29, Ex. 2, at 16 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief))("…John J. Koresko and Lawrence Koresko run the League which is an unincorporated association of employers."); Castellano (03-cv-6903), Doc. No. 249-11 (August 25, 2009 Deposition of John Koresko; Ex. 8 to United States' motion), at 22-23, Tr. 85:23-87:7 ("There is no Regional Employers Assurance League as an entity. It is an un -- it is basically a -- it's very similar to Penn Public Trust in that it was an association of employers. And we basically are the association. We run the association."); Ex. 3 (May 4, 2004 Affidavit of John Koresko), p. 2, ¶ 5 ("My brother and I are the only persons who have signed documents or taken actions on behalf of …REAL, and we report to no superiors in that regard."

### b.  REAL VEBA's Arrangement as a Tax-advantaged vehicle

"REAL VEBA was originally adopted on March 20, 1995 as a multiple employer VEBA, following consolidation of certain trusts originally known as the Delaware Valley Leagues, and it has operated successfully since that time."[95] "REAL VEBA Trust is a tax-driven 'multiple employer trust' ('MET') that was designed and intended from its inception as an entrepreneurial venture offering a taxfavored funding vehicle for participating employers who sought to maximize the deductibility of their cost for welfare benefits for themselves and their employees."[96] "The REAL VEBA was intentionally structured to favor owner/employees in a 'Top Hat' tax advantaged arrangement."[97] Employers and highly compensated employees using REAL VEBA documents "did so for an immediate deduction and with tax purposes in mind."[98] "In addition to the deduction, the [REAL VEBA] arrangement is tax advantaged for estate planning and business succession purposes."[99]

---

[95] In re: REAL VEBA Trust, No. 13–ap–16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 4, ¶ 19.

[96] In re: REAL VEBA Trust, No. 13–ap–16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 4, ¶ 17. See also DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 14, 35.

[97] DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 47, ¶ 4 and 48,¶¶ 7, 23 (citing affidavit of Jeanne Bonney, other attorney involved in REAL VEBA arrangement).

[98] DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 82, ¶ 61. See also DOL (09-cv-988), Doc. No. 204 (Koresko's Answer to DOL's Complaint; Ex. 9 to the United States' motion), at 3, ¶ 4. ("[T]he arrangement was always operated primarily for a compensatory purpose, for tax advantage, and primarily for the benefit of Owner/Employees.").

[99] DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 48, ¶ 12.

"To achieve that tax objective, the REAL VEBA Trust is specifically designed as a 'voluntary employees' beneficiary association' ('VEBA') described in § 501(c)(9) of the Internal Revenue Code ("IRC"), and it was intended as a 'ten or more employer plan' ('TOME Plan') that meets the requirements of IRC § 419A(f)(6)."[100] Section 2.1 of the REAL VEBA "Master Trust Agreement" states:

> 2.1 <u>Purpose</u>. This trust is established in connection with a voluntary employees beneficiary association pursuant to Section 50l(c)(9) of the Code and a Ten-Or-More-Employer plan in accordance with Section 419A(f)(6) of the Code for the purpose of receiving contributions of the Adopting Employers and their employees to provide for life, sick, accident or other benefits and distributing benefits to the employees and beneficiaries hereunder or payment of insurance premiums or making such other similar payments pursuant to the terms of the Plan.[101]

Section 10.20 of the REAL VEBA Health and Welfare Benefit Plan Document states:

> <u>Ten or More Employer Plan</u> - It is intended that this Plan qualify as a 10 or more Employer Plan as defined in Section 419A(Q(6) of the Code. No Employer shall normally contribute more than 10 percent of the total contributions required under the plan for all Employers. The 10 percent limitation in the preceding sentence may be adjusted downward to conform with Regulations issued by the Internal-Revenue Service.[102]

In an attempt to comply with IRC §§ 419A(f)(6) and 501(c)(9), the REAL VEBA required participants "to sever all ownership rights in the assets held in the REAL VEBA

---

[100] <u>In re: REAL VEBA Trust</u>, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 4, ¶ 18. <u>See also</u> DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 2, ¶¶ 7-8, 18.

[101] <u>In re: REAL VEBA Trust</u>, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion, at Ex. A, ¶ 2.1 (Master Trust Agreement)).

[102] <u>In re: REAL VEBA Trust</u>, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion, at Ex. B, ¶ 10.20 (Health and Welfare Benefit Plan Document)).

Trust so that the employer can deduct its contributions on its corporate tax returns, and so that the employee can defer current taxation on the value of the benefit."[103] "Not one document gives any employee any right to any asset owned, possessed, or to be received by any of the Trusts."[104]

### c.  Mr. Koresko's Knowledge of TOMEs

Mr. Koresko was aware that "[i]n general, deductions are limited to the cost of providing current benefits in the current year (IRC § 419) plus limited prefunding of benefits to be provided in future years (IRC § 419A)."[105] He understood that: "Congress left an exception in the law for multiple-employer VEBAs. Under IRC § 419A(f)(6), if 'ten or more employers' join a single plan, and the plan otherwise satisfies the requirements of that section, the restrictions on deductions for amounts contributed to welfare plans imposed by IRC §§ 419 and 419A do not apply."[106] Mr. Koresko recognized that Treas. Reg. § 1.419A(f)(6)-1(c) identifies certain characteristics that

---

[103] Doc. No. 29, Ex. 2, at 49 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief))("REAL VEBA's *intended* tax treatment under non-ERISA law (*i.e.*, IRC §§ 419(f)(6), 501(c)(9)) is to *sever* all ownership rights in the assets held in the REAL VEBA Trust so that the employer can *deduct* its contributions on its corporate tax returns, and so that the employee can *defer current taxation* on the value of the benefit." (emphasis in original)). See also id. at 40 (explaining how if the beneficiary's interest in a benefit were instant "so would be the tax on the employee."); DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion) at 2, ¶¶ 31-33.

[104] Doc. No. 29, Ex. 2, at 29-30 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief)(citing Master Trust, Sec. 7.05(f) and (g))). See also Master Trust § 10.02 ("Nothing herein contained shall be construed as giving any Participant ...any right or interest... other than as provided herein.")(also cited by Koresko in Appellate Brief for this proposition); DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion) at 2, ¶¶ 31-33.

[105] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion) at 7, ¶ 32.

[106] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion) at 7, ¶ 33.

disqualify an arrangement purporting to operate as a TOME plan under I.R.C. § 419A(f)(6).[107] Mr. Koresko also understood that "[i]f a plan exhibits even one of these characteristics, the IRS will view it as not being a TOME Plan, unless the plan can otherwise establish to the Commissioner's satisfaction that the plan satisfies IRC § 419A(f)(6)."[108]

### d.  REAL VEBA's Provision of Benefits to Participants

"The terms of the [REAL VEBA] Plan and Trust do not state a sum certain payable to any beneficiary."[109] "The promise to pay a death benefit is NOT a sum certain, it is based on compensation and is contingent on numerous events set forth with specificity in the governing documents, all of which make any death benefit promise a contingent, unsecured promise to pay."[110]

---

[107] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 8, ¶ 39 ("The IRS regulations also list five characteristics of a plan that is not a TOME Plan: a. The plan assets are separately accounted for among employers;  b. The plan does not provide for a fixed welfare benefit, for a fixed coverage period, for a fixed price; c. The plan charges an unreasonably high price for the covered risk; d. The amount charged under the plan is the not the same for all employers, except for price differences that reflect the differences in current risk or rating factors that are commonly taken into account in manual rates used by insurers (such as current age, gender, geographic locale, number of covered dependents, and benefit terms); and e. The plan uses nonstandard triggers for paying benefits or other amounts from the plan (*i.e.*, other than for illness, personal injury, death or involuntary termination of employment).").

[108] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 9, ¶ 40. Mr. Koresko also admitted, under oath, that he constructed the REAL VEBA "knowing that IRS had an adverse opinion of [it], as demonstrated in the Tax Court cases of *Schneider v. Com'r* (1992) and *Moser v. Com'r* (1988) and *Wellons v. Com'r* (1992)." DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 3, ¶ 19. He knew that "[t]he adverse litigation position of IRS and its intention against § 419(f)(6) plans was publicized in the Internal Revenue Bulletin, in Notice 95-34, issued June 5, 1995." Id. at 3, ¶ 20.

[109] DOL (09-cv-988), Doc. No. 204 (Koresko's Answer to DOL's Complaint; Ex. 9 to the United States' motion), at 10, ¶ 26. See also DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at  75, ¶ 22 ("The administrator here determines the identity of a payee and the amount of any benefit, all in the administrator's discretion.").

[110] DOL (09-cv-988), Doc. No. 204 (Koresko's Answer to DOL's Complaint; Ex. 9 to the United States' motion), at 9, ¶ 23 (emphasis in original). See also DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John

"Participants have only a contingent, unsecured claims [sic] against the trust estate to receive possible benefits, if they are claimed in the future [...]."[111] "The determination of how all benefits are funded is separate, distinct and irrelevant to the determination of whether any particular claimant is entitled to a benefit under the plain language of the governing documents."[112] "[T]he plan documents provide that no benefits are vested and that a plan may be involuntarily terminated or *the benefits amended at any time*."[113] The REAL VEBA provides no vested and accrued benefits or ownership interest by its plan terms.[114] Participants were never entitled to insurance proceeds, only "to make a *claim* for

---

Koresko; Ex. 4 to the United States' motion), at 2, ¶¶ 31-33. <u>See also</u> DOL (09-cv-988), Doc. No. 429 (July 8, 2013 Hr'g Tr.; Ex. 5 to the United States' motion), Tr. 116-17 (Mr. Koresko explaining how a benefit is calculated at death).

[111] DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 2, ¶ 33.

[112] <u>Castellano</u> (03-cv-6903), Doc. No. 249-11 (Statement of Undisputed Facts in Support of REAL VEBA Trust for MSJ; Ex. 7 to United States' motion), at 20, ¶ 59 ("The trust documents speak for themselves. The foregoing paragraphs are incorporated by reference. Furthermore, all assets of the trust are available for all claims, not simply for any one claim. [Complaint, Ex. 3, REAL VEBA Master Trust Agreement, Sec. 4.4]. The determination of how all benefits are funded is separate, distinct and irrelevant to the determination of whether any particular claimant is entitled to a benefit under the plain language of the governing documents. Furthermore, Koresko asserts nothing, and he never has. <u>See Confer v. Custom Engineering</u> (3d Cir.)(corporate fiduciaries are not to be ignored.").

[113] DOL (09-cv-988), Doc. No. 204 (Koresko's Answer to DOL's Complaint; Ex. 9 to the United States' motion), at 8, ¶ 20b (emphasis added)(citing to Plan Document Article 7). I note that Article 7: Provision Relating to Insurance, Section 7.05(f) states:
> Ownership - All policies and Contracts shall be owned by the Trustee. All cash value contained in such policies and Contracts shall be owned by the Trustee. The Trustee shall be under no obligation to distribute a policy or Contract to any participant or beneficiary as part of any benefit or termination payment, but may, instead, distribute the cash surrender value of same.

<u>See In re: REAL VEBA Trust</u>, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion, at Ex. B, ¶ 7.05(f) (Health and Welfare Benefit Plan Document)). <u>See also</u> DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 75, ¶ 21 ("There is no provision in any governing documents giving any participant a vested interest in any trust asset.").

[114] Doc. No. 29, Ex. 2, at 11 (<u>Perez v. Koresko, et al.,</u> 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief)("Under the Appellant Trusts, there are no vested and accrued benefits by their plain terms…"). <u>See also In re: REAL VEBA Trust</u>, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 25, ¶ 112 ("REAL VEBA's governing documents unequivocally establish that REAL VEBA's Trustee retains legal ownership of REAL VEBA's assets, and no adopting employer or Employee has any beneficial ownership interest in those assets. (*See* Trust § 4.6; Master Plan Document § 7.02(f).)").

benefits."[115] "REAL VEBA beneficiaries merely have an uncertain and unvested claim that may never blossom into a payable benefit. In short, nothing is guaranteed."[116]

"The Trustee retains ownership of all aspects of these insurance policies, and is the only named beneficiary."[117] "REAL VEBA is designed so that no employers, employees, or employer-level 'plans' could have any ownership or control over assets in the REAL VEBA Trust. (Trust § 4.6; Master Plan Document§ 7.05(f).) Those assets are owned by the Trustee, […] PPT, on behalf of the Trusts and *may be distributed only based on the exercise of discretion of the Plan Administrator, Penn-Mont Benefit Services, Inc.* (Trust§

---

See also DOL (09-cv-988), Doc. No. 429 (July 8, 2013 Hr'g Tr.; Ex. 5 to the United States' motion), Tr. 110 (Mr. Koresko explaining that "[t]here is absolutely nothing in any of the document that vests in any participant any right to any policy.") and 112 ("[T]here are no vested benefits in a welfare plan of this arrangement – this type -- until the final act of exchange of the relief or the check takes place."); DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 78, ¶ 38 ("The documents of REAL VEBA and SEWBT give employees no present or vested interests in any particular assets, either during operating assets or upon termination of an employer's subscription.").

[115] Castellano (03-cv-6903), Doc. No. 249-11 (Statement of Undisputed Facts in Support of REAL VEBA Trust for MSJ; Ex. 7 to United States' motion), at 9, ¶ 16 ("Under the governing documents, Gretchen Castellano was never entitled to any insurance proceeds. She was entitled to make a claim for benefits. No beneficiary has an interest in any policy owned by the trust."). See also Doc. No. 29, Ex. 2, at 42 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief)("It does not follow that, because a trust holds assets for the potential benefit of a claimant [who is not entitled to anything until the Administrator is satisfied that each and every condition precedent is satisfied, including the execution of a release in form acceptable to the Administrator], the claimant had become something more. Under typical laws of property, even the holder of a contingent remainder cannot be cut off by the holder of the fee interest, and he thus has a beneficial ownership interest, albeit remote. [After all, a previous remainderman might exhaust all assets]. Here, there is nothing more than a privilege to submit a claim, subject to satisfaction of dozens of conditions, with no vesting until execution of the final condition of release."); DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at  62.

[116] Doc. No. 29, Ex. 2, at 50 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief). See also DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at  61, ¶ 5 ("There is NO VESTING or legal or equitable title of any employee or employer in Trust assets in the Trust Fund or otherwise.").

[117] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 14, ¶ 59. See also id. at 26, ¶ 118 ("Accordingly, no one claiming to be a 'beneficiary' has any beneficial ownership interest in the assets of the REAL VEBA Trust.").

4.6; Master Plan Document§ 7.05(f); see also Master Plan Document§ 5.06.)."[118]
"Assuming that a participating employee remained eligible for benefits until death - and
the employer, employee and claimant passed other elements of the trust- the Master Plan
document still gives the Plan Administrator the right to 'determine a Beneficiary to
whom payment shall be made.'"[119] "Since the Administrator acts as the Plan Committee
so long as it is appointed, it has tremendous control over benefits: the source of benefits,
to whom payable, the mechanics of payment; and execution of the claim procedure."[120]
"Although the Plan Administrator could designate the person named by the deceased
employee, the Master Plan imposes no such requirement. [...] [T]he Plan Administrator
has this discretion to choose from a number of potential beneficiaries..."[121] The governing
documents grant the Administrator discretion to refrain from payment of any amount
until all contingencies have been met.[122]

---

[118] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 9, ¶ 42 (emphasis added).

[119] Doc. No. 29, Ex. 2, at 22 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief)(quoting Master Plan, § 5.06(a)).

[120] DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 20, ¶ 42 (citing Trust Document Section 5.02: Limitations).

[121] Doc. No. 29, Ex. 2, at 22 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief)(quoting Master Plan, § 5.06(a)).

[122] See Doc. No. 29, Ex. 2, at 4 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief)("Can employer-level benefit arrangements alleged to be ERISA plans hold 'an undivided beneficial ownership interests in the assets of a non-ERISA trust under typical notions of property law' when the governing documents prevent vesting of any accrued benefit, make no reference to any such plans, and grant the Administrator discretion to refrain from payment of any amount until it a claimant has satisfied all contingencies and executes a release?").

### e.  REAL VEBA Payment Triggers

Mr. Koresko has admitted that Penn-Mont, as administrator and Plan Committee, enjoyed "tremendous control over benefits: the source of benefits, to whom payable, the mechanics of payment; and execution of the claim procedure."[123] "No one in a discretionary trust qualifies for a benefit *unless the Trustee exercises its discretion in the claimant's favor*. It is this discretion conferred upon REAL VEBA's Trustee that prevents any beneficiary from having any measurable ownership interest in the assets held in the REAL VEBA Trust, including the insurance policies."[124] The Trustee, being a directed Trustee, is "subject to the direction of Penn-Mont in all material respects."[125]

Mr. Koresko has described Penn-Mont's discretion over the benefit claims process as "*sole* and *absolute*."[126] "The Administrator [Penn-Mont] has to exercise a power of appointment in order for anything to become payable; and as a matter of historical, typical property law, the privilege to ask for a benefit is only a contingent expectancy known in trust law as an executory use subject to a contingent power of appointment.

---

[123] DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 20, ¶ 42 (citing Trust Document Section 5.02: Limitations). See also id. at ¶ 38 (citing Trust Document § 5.04: Powers of Administrator) and at ¶ 48 (affirming that fact that the Administrator has "wide discretion" over "payment or other dispositions from the Trust Fund").

[124] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 25-26, ¶ 117 (emphasis added).

[125] DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 13, ¶ 17 (citing Bonney's Affidavit and trustee documents).

[126] DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 2, ¶ 33 (emphasis added)("Paticipants [sic] have only a contingent, unsecured claims against the trust estate to receive possible benefits, if they are claimed in the future; and PennMont, in its sole and absolute discretion, determines a payee from a list of possible payees in Article 6, determines under Article 5 that a benefit is due, determines the amount of any benefit under Article 5 and 8, determines that an insurance contract sufficient to indemnify the trust actually exists under Article 8, and determines that the employer is still a participating employer associated with the trusts pursuant to Article 5 and 9.").

Because it can be cut off by the holder of the fee interest, the trustee or administrator

acting as the boss of trustees, or by failure of an employer to make sufficient

contributions, and it is not payable until the moment of exchange of the release for the

amount determined to be payable, there is no prior beneficial interest."[127] "[T]here is no

beneficial interest unless the documents are interpreted by the administrator to recognize

a beneficial interest, and that could be cut off by something technical or as simple as a

disputed claim to eligibility (§10.06) or a prohibited alienation, assignment, transfer or

anticipation related to of any portion of a payment or interest in the Trust or to be

received by virtue of the Trust (see, e.g. §10.04)."[128]

    "To determine if claimants satisfy the prerequisites for payment, PMBS must

evaluate each claim as follows to determine eligibility for a benefit:

> a. Was the decedent a participant- *i.e.*, was he an employee as defined by
> the Master Plan Document who met the eligibility and participation
> requirements in Article 3 of the Master Plan Document?
>
> b. Was the decedent's employer entitled to utilize the trust, or had it
> terminated its participation or any benefits? (See Master Plan Document§
> 9.04; Adoption Agreement.)
>
> c. Did the employee commit any act disqualifying him from benefits? (See
> Master Plan Document§§ 5.10, 9.04.)
>
> d. Did any insurance company deny payment of the Plan Administrator's
> death claim on account of some action of the participant or employer? (See
> Master Plan Document§ 5.04.)

---

[127] Doc. No. 29, Ex. 2, at 42-43 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief).

[128] Doc. No. 29, Ex. 2, at 30 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief).

e. Was there any question about the validity of the beneficiary nomination, or would PMBS be required to investigate any other possible claimants? (See Master Plan Document § 5.06.)

f. Could PMBS determine a 'Benefit Base,' taking into account any required modifications of, e.g., includable compensation? (See Master Plan Document § 5.03(a); Adoption Agreement § 5.b.)

g. Did a policy of insurance exist for a benefit intended to be insured?

h. After PMBS determined the Benefit Base, and applied the applicable multiple to it, did the employee accept the offer of Penn-Mont Benefit Services, Inc. for payment of the benefit in 'a series of monthly payments not to exceed 120 or as otherwise provided in an annuity purchased by the plan or as agreed by the Beneficiary and the Administrator, in the Administrator's sole and absolute discretion'? (See Master Plan Document § 5.02(a).)."[129]

"Assuming a valid election by the beneficiary determined by PMBS [Penn-Mont Benefit Services, Inc.] or agreement between the Plan Administrator and beneficiary, the beneficiary [then] executes a release in favor of PMBS in exchange for a payment of benefits. (See Master Plan Document §§ 5.06, 10.11.)]."[130]

---

[129] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 15-16, ¶ 65. See also Doc. No. 29, Ex. 2, at 40-42 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief))(outlining all the contingencies which might prevent payment).

[130] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 16, ¶ 66. See also Doc. No. 29, Ex. 2, at 4 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief)("[T]he governing documents prevent vesting of any accrued benefit, [...] and grant the Administrator discretion to refrain from payment of any amount *until it a claimant* has satisfied all contingencies and executes a release." (emphasis added)); Id. at 42 ("It does not follow that, because a trust holds assets for the potential benefit of a claimant [*who is not entitled to anything until the Administrator is satisfied that each and every condition precedent is satisfied, including the execution of a release in form acceptable to the Administrator*], the claimant had become something more. Under typical laws of property, even the holder of a contingent remainder cannot be cut off by the holder of the fee interest, and he thus has a beneficial ownership interest, albeit remote.")(brackets in original, emphasis added)) and at 50 ("REAL VEBA's governing documents impose substantial limits upon REAL VEBA's beneficiaries' rights to receive death benefits."); In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at Ex. B (Health and Welfare Plan Document § 9.03(c))("In no event shall this provision be construed as vesting any right to any benefit to any individual prior to the time all events have occurred which fix the nature, timing and amount of such benefit and absolute entitlement thereto.").

### f.  Assessment of § 6700 Penalties on Mr. Koresko[131]

On November 19, 2012, a delegate of the Secretary of the Treasury assessed

penalties in the amount of $386,000 against Koresko pursuant to I.R.C. § 6700 for tax

year 2003.[132] The IRS gave notice and demand for payment of the penalties assessed on

or about November 19, 2012.[133]

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and that the movant is entitled to judgment as a matter of

law." FED. R. CIV. P. 56(a). A dispute is "genuine" when "a reasonable jury could return

a verdict for the nonmoving party" based on the evidence in the record. Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" when it

"might affect the outcome of the suit under the governing law." Id.

---

[131] The IRS also claims that the following is an undisputed fact: "As of May 30, 2014, Koresko is liable to the United States for the unpaid balance of the penalties assessed in the amount of  $343,651.29, plus interest." See Doc. No. 29-2 at ¶ 62. The Government cites to a Declaration of IRS Revenue Officer Ted Tsarouchis from May 30, 2014, the certificate of the assessment of tax, and caselaw regarding the presumption of correctness given the Certificate of Assessment to support this point. See United States v. Stuler, 396 Fed. Appx. 798, 801 (3d Cir. 2010)("Because the IRS's determination that a tax is owed is presumed correct, the United States can establish a *prima facie* case of the tax liability charged by introducing into evidence certified copies of the certificates of tax assessment."); Ex. 10 at ¶ 4; FED. R. EVID. 902(1). This statement is not a fact; it is a legal conclusion. While a tax assessment may be presumed to be correct and the certificate is self-authenticating, it does not mean that the certificate automatically transforms an assessment into a judgment for liability. 26 U.S.C. §6700(a), which assesses a penalty and not a tax, also includes a scienter element. To say Mr. Koresko is liable simply because the IRS agent assessed penalties on him would essentially nullify § 6703. I explain further, below, why the IRS must still verify the basis for its calculation of the penalty.

[132] See Compl., Doc. 1 at ¶ 6; Doc. No. 29, Ex. 10 (May 30, 2014 Declaration of IRS Revenue Officer Ted Tsarouchis and certified IRS Form 4340, Certificate of Assessment of penalties regarding John Koresko for tax year 2003).

[133] See Compl., Doc. 1 at ¶ 6; Doc. No. 29, Ex. 10 (May 30, 2014 Declaration of IRS Revenue Officer Ted Tsarouchis and certified IRS Form 4340, Certificate of Assessment of penalties regarding John Koresko for tax year 2003).

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met simply by demonstrating to the district court that "there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1). Summary judgment is therefore appropriate when the non-moving party fails to rebut by making a factual showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Under Rule 56 of the Federal Rules of Civil Procedure, the court must draw "all justifiable inferences" in favor of the non-moving party. Anderson, 477 U.S. at 255. The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252. If the non-moving party has produced more than a "mere scintilla of evidence" demonstrating a genuine issue of material fact, then the court may not credit the moving party's "version of events against the opponent, even if the quantity

of the [moving party's] evidence far outweighs that of its opponent." <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

## V.    DISCUSSION[134]

### a.  26 U.S.C. § 6700(a)(2)(A)

To establish a violation of section 6700(a)(2)(A), the government must prove four elements about Mr. Koresko: 1) he organized or participated in the sale of certain investment plans or arrangements; 2) he made statements about the allowability of deductions or tax credits, excludability of income, or securing of other tax benefits; 3) he knew or had reason to know the statements were false; and 4) the statements pertain to a material matter. <u>See</u> <u>U.S. v. Stover</u>, 650 F.3d 1099, 1107 (8th Cir. 2011); <u>United States v. Benson</u>, 561 F.3d 718, 721-22 (7th Cir. 2009), <i>cert. denied</i>, 130 S.Ct. 759 (2009); <u>United States v. Gleason</u>, 432 F.3d 678, 682 (6th Cir. 2005); <u>United States v. Estate Pres. Servs.</u>, 202 F.3d 1093, 1098 (9th Cir. 2000);  <u>U.S. v. Campbell</u>, 897 F.2d 1317, 1320 (5th Cir. 1990).

### b.  Mr. Koresko Made Statements about the Allowability of Deductions or Tax Credits

The Government specifically argues that Mr. Koresko made false statements pertaining to REAL VEBA's status as a TOME. These statements, the Government argues, contradict what is required by the Code to allow a VEBA to be a TOME. Therefore, Mr. Koresko's presentation of the REAL VEBA as a TOME, which allowed

---

[134] This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346(a), and 26 U.S.C. §§ 6703(c) and 7422. Venue is proper pursuant to 28 U.S.C. §§ 1396 and 1402.

for certain tax-advantages to employers, brought him within the purview of § 6700(a)

penalties.

It is clear that the REAL VEBA was intended to be a TOME. Both the Master

Trust Agreement and the Health and Welfare Benefit Plan Document specifically state

that the REAL VEBA was established as a VEBA and a TOME.[135] Mr. Koresko created

these documents.[136] Mr. Koresko also reiterated this point in subsequent litigation about

the REAL VEBA.[137] Mr. Koresko recognized that the REAL VEBA should be designed

---

[135] See REAL VEBA Master Trust Agreement at Section 2.1,  In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion, at Ex. A, ¶ 2.1 (Master Trust Agreement))("2.1 Purpose. This trust is established in connection with a voluntary employees beneficiary association pursuant to Section 50l(c)(9) of the Code and a Ten-Or-More-Employer plan in accordance with Section 419A(f)(6) of the Code for the purpose of receiving contributions of the Adopting Employers and their employees to provide for life, sick, accident or other benefits and distributing benefits to the employees and beneficiaries hereunder or payment of insurance premiums or making such other similar payments pursuant to the terms of the Plan."); REAL VEBA Health and Welfare Benefit Plan Document at Section 10.20, In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion, at Ex. B, ¶ 10.20 (Health and Welfare Benefit Plan Document))("Ten or More Employer Plan - It is intended that this Plan qualify as a 10 or more Employer Plan as defined in Section 419A(Q(6) of the Code. No Employer shall normally contribute more than 10 percent of the total contributions required under the plan for all Employers. The 10 percent limitation in the preceding sentence may be adjusted downward to conform with Regulations issued by the Internal-Revenue Service."). See also In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 4, ¶ 19 ("REAL VEBA was originally adopted on March 20, 1995 as a multiple employer VEBA, following consolidation of certain trusts originally known as the Delaware Valley Leagues, and it has operated successfully since that time.").

[136] See Doc. No. 29, Ex. 2, at 16 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief)); Perez v. Koresko, et al., 09-cv-988 (E.D. Pa. March 6, 2009)(McLaughlin, J.)(hereinafter, "DOL (09-cv-988)"), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 2, ¶ 3; Id., Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶ 20.

[137] See In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 4, ¶ 18("To achieve that tax objective, the REAL VEBA Trust is specifically designed as a 'voluntary employees' beneficiary association' ('VEBA') described in § 501(c)(9) of the Internal Revenue Code ('IRC'), and it was intended as a 'ten or more employer plan' ('TOME Plan') that meets the requirements of IRC § 419A(f)(6)."). See also Ex. 3 (May 4, 2004 Affidavit of John Koresko), at 2, ¶¶ 7-8, 18.

to comply with IRC §§ 419A(f)(6) and 501(c)(9).[138] The purpose of the REAL VEBA was to offer its participant employers a tax advantage.[139]

Section 1.419A(f)(6)–1 (c) outlines characteristics which "generally indicates that the plan is not a 10 or more employer plan described in section 419A(f)(6)." "[U]nless established to the satisfaction of the Commissioner that the plan satisfies the requirements of section 419A(f)(6) and this section," a plan having any of the outlined characteristics is not considered to be a TOME. 26 C.F.R. § 1.419A(f)(6)–1 (c). What this motion for summary judgment purports to establish is that Mr. Koresko is liable for those statements made in connection with two provisions regarding TOMEs: I.R.C. § 416A(f)(6)-1(c)(4) and (c)(6).

---

[138] See Doc. No. 29, Ex. 2, at 49 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief)("REAL VEBA's *intended* tax treatment under non-ERISA law (*i.e.*, IRC §§ 419A(f)(6), 501(c)(9)) is to *sever* all ownership rights in the assets held in the REAL VEBA Trust so that the employer can *deduct* its contributions on its corporate tax returns, and so that the employee can *defer current taxation* on the value of the benefit." (emphasis in original)).

[139] See In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 4, ¶ 17 ("REAL VEBA Trust is a tax-driven 'multiple employer trust' ('MET') that was designed and intended from its inception as an entrepreneurial venture offering a taxfavored funding vehicle for participating employers who sought to maximize the deductibility of their cost for welfare benefits for themselves and their employees."); DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 47, ¶ 4¶ 23 (citing affidavit of Jeanne Bonney, other attorney involved in REAL VEBA arrangement)("The REAL VEBA was intentionally structured to favor owner/employees in a 'Top Hat' tax advantaged arrangement."); DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 82, ¶ 61(stating that employers and highly compensated employees using REAL VEBA documents "did so for an immediate deduction and with tax purposes in mind."); DOL (09-cv-988), Doc. No. 204 (Koresko's Answer to DOL's Complaint; Ex. 9 to the United States' motion), at 3, ¶ 4. ("[T]he arrangement was always operated primarily for a compensatory purpose, for tax advantage, and primarily for the benefit of Owner/Employees."); DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 48, ¶ 12 ("In addition to the deduction, the [REAL VEBA] arrangement is tax advantaged for estate planning and business succession purposes.").

1. **Count V: The Real VEBA Scheme Did Not Provide a Fixed Welfare Benefit**

The Government argues that the REAL VEBA arrangement did not provide a fixed welfare benefit nor a fixed coverage period.  The Government claims that Mr. Koresko knew or should have known that the REAL VEBA arrangement did not qualify as a Ten-Or-More-Employers (TOME) plan under I.R.C. § 416A(f)(6) because it had neither of these pre-requisite features. Nonetheless, Mr. Koresko presented the arrangement as a TOME in the REAL VEBA documents. Given the Mr. Koresko promoted the REAL VEBA as a TOME, when he knew or should have known it did not qualify, the Government argues he is liable for penalties imposed under § 6700.

Count V pertains to 26 C.F.R. § 1.419A(f)(6)–1 (c)(4).  Section  1.419A(f)(6)–1 (c) outlines characteristics which "generally indicates that the plan is not a 10 or more employer plan described in section 419A(f)(6)." "[U]nless established to the satisfaction of the Commissioner that the plan satisfies the requirements of section 419A(f)(6) and this section," a plan having any of the outlined characteristics is not considered to be a TOME. 26 C.F.R. § 1.419A(f)(6)–1 (c). One characteristic is whether a plan provides a fixed welfare benefit package. § 1.419A(f)(6)–1 (c)(4).  "The plan does not provide for fixed welfare benefits for a fixed coverage period for a fixed cost" is not considered to be a TOME. § 1.419A(f)(6)–1 (c)(4).  Section § 1.419A(f)(6)–1 (d)(5) explains further:

> A plan provides for fixed welfare benefits for a fixed coverage period for a fixed cost, if it—
>
> (A) Defines one or more welfare benefits, each of which has a fixed amount that does not depend on the amount or type of assets held by the fund;

(B) Specifies fixed contributions to provide for those welfare benefits; and

(C) Specifies a coverage period during which the plan agrees to provide specified welfare benefits, subject to the payment of the specified contributions by the employer.

By Mr. Koresko's own admissions, it is clear the REAL VEBA did not provide fixed welfare benefits. "The terms of the Plan and Trust do not state a sum certain payable to any beneficiary."[140] "The promise to pay a death benefit is NOT a sum certain, it is based on compensation and is contingent on numerous events set forth with specificity in the governing documents, all of which make any death benefit promise a contingent, unsecured promise to pay."[141]

In fact, participants were not entitled to any welfare benefit, let alone a fixed welfare benefit. "Participants have only a contingent, unsecured claims [sic] against the trust estate to receive possible benefits, if they are claimed in the future […]."[142] "The determination of how all benefits are funded is separate, distinct and irrelevant to the determination of whether any particular claimant is entitled to a benefit under the plain language of the governing documents."[143] "[T]he plan documents provide that no benefits

---

[140] DOL (09-cv-988), Doc. No. 204 (Koresko's Answer to DOL's Complaint; Ex. 9 to the United States' motion), at 10, ¶ 26. See also Doc. No. 29, Ex. 2, at 49 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief))("REAL VEBA beneficiaries never have a moment in time when they have a guaranteed right to receive a vested sum certain. To obtain the favorable tax treatment offered by an IRC § 419A multiple employer trust, REAL VEBA beneficiaries have uncertain, unvested rights from the moment the employer signs the Adoption Agreement and for so long as the employer participates in REAL VEBA.").

[141] DOL (09-cv-988), Doc. No. 204 (Koresko's Answer to DOL's Complaint; Ex. 9 to the United States' motion), at 9, ¶ 23 (emphasis in original).

[142] DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 2, ¶ 33.

[143] Castellano (03-cv-6903), Doc. No. 249-11 (Statement of Undisputed Facts in Support of REAL VEBA Trust for MSJ; Ex. 7 to United States' motion), at 20, ¶ 59 ("The trust documents speak for themselves. The foregoing

are vested and that a plan may be involuntarily terminated or *the benefits amended at any time*."[144] The REAL VEBA provides no vested and accrued benefits or ownership interest by its plan terms.[145] Participants were never entitled to insurance proceeds, only to make a *claim* for benefits."[146]

"Since the Administrator acts as the Plan Committee so long as it is appointed, it has tremendous control over benefits: the source of benefits, to whom payable, the

---

paragraphs are incorporated by reference. Furthermore, all assets of the trust are available for all claims, not simply for any one claim. [Complaint, Ex. 3, REAL VEBA Master Trust Agreement, Sec. 4.4]. The determination of how all benefits are funded is separate, distinct and irrelevant to the determination of whether any particular claimant is entitled to a benefit under the plain language of the governing documents. Furthermore, Koresko asserts nothing, and he never has. See Confer v. Custom Engineering (3d Cir.)(corporate fiduciaries are not to be ignored).").

[144] DOL (09-cv-988), Doc. No. 204 (Koresko's Answer to DOL's Complaint; Ex. 9 to the United States' motion), at 8, ¶ 20b (emphasis added)(citing to Plan Document Article 7). I note that Article 7: Provision Relating to Insurance, Section 7.05(f) states:

> Ownership - All policies and Contracts shall be owned by the Trustee. All cash value contained in such policies and Contracts shall be owned by the Trustee. The Trustee shall be under no obligation to distribute a policy or Contract to any participant or beneficiary as part of any benefit or termination payment, but may, instead, distribute the cash surrender value of same.

See In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion, at Ex. B, ¶ 7.05(f) (Health and Welfare Benefit Plan Document)). See also DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 83, ¶ 64.

[145] Doc. No. 29, Ex. 2, at 11 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief)("Under the Appellant Trusts, there are no vested and accrued benefits by their plain terms…"). See also In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 25, ¶ 112 ("REAL VEBA's governing documents unequivocally establish that REAL VEBA's Trustee retains legal ownership of REAL VEBA's assets, and no adopting employer or Employee has any beneficial ownership interest in those assets. (See Trust § 4.6; Master Plan Document § 7.02(f).)."); DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 2, ¶¶ 31-33.

[146] Castellano (03-cv-6903), Doc. No. 249-11 (Statement of Undisputed Facts in Support of REAL VEBA Trust for MSJ; Ex. 7 to United States' motion), at 12, ¶ 16 ("Under the governing documents, Gretchen Castellano was never entitled to any insurance proceeds. She was entitled to make a claim for benefits. No beneficiary has an interest in any policy owned by the trust."). See also Doc. No. 29, Ex. 2, at 42 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief)("It does not follow that, because a trust holds assets for the potential benefit of a claimant [who is not entitled to anything until the Administrator is satisfied that each and every condition precedent is satisfied, including the execution of a release in form acceptable to the Administrator], the claimant had become something more. Under typical laws of property, even the holder of a contingent remainder cannot be cut off by the holder of the fee interest, and he thus has a beneficial ownership interest, albeit remote. [After all, a previous remainderman might exhaust all assets]. Here, there is nothing more than a privilege to submit a claim, subject to satisfaction of dozens of conditions, with no vesting until execution of the final condition of release.").

mechanics of payment; and execution of the claim procedure."[147] "Although the Plan Administrator could designate the person named by the deceased employee, the Master Plan imposes no such requirement. [...] [T]he Plan Administrator has this discretion to choose from a number of potential beneficiaries..."[148] As Mr. Koresko puts very succinctly, "REAL VEBA beneficiaries merely have an uncertain and unvested claim that may never blossom into a payable benefit. In short, nothing is guaranteed."[149]

The governing documents grant the Administrator discretion to refrain from payment of any amount until all contingencies have been met.[150] "The Trustee retains ownership of all aspects of these insurance policies, and is the only named beneficiary."[151] "REAL VEBA is designed so that no employers, employees, or employer-level 'plans' could have any ownership or control over assets in the REAL VEBA Trust. (Trust § 4.6; Master Plan Document § 7.05(f).) Those assets are owned by

---

[147] DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 20, ¶ 42 (citing Trust Document Section 5.02: Limitations). See also In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at Ex. B (Health and Welfare Plan Document § 6.03)("The term 'Committee' as used herein shall include the 'Administrator,' unless the context of the instrument indicates a contrary intent.").

[148] Doc. No. 29, Ex. 2, at 22 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief)(quoting Master Plan, § 5.06(a)).

[149] Doc. No. 29, Ex. 2, at 50 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief).

[150] See Doc. No. 29, Ex. 2, at 4 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief)("Can employer-level benefit arrangements alleged to be ERISA plans hold 'an undivided beneficial ownership interests in the assets of a non-ERISA trust under typical notions of property law' when the governing documents prevent vesting of any accrued benefit, make no reference to any such plans, and grant the Administrator discretion to refrain from payment of any amount until it a claimant has satisfied all contingencies and executes a release?").

[151] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 14, ¶ 59. See also id. at 26, ¶ 118 ("Accordingly, no one claiming to be a 'beneficiary' has any beneficial ownership interest in the assets of the REAL VEBA Trust.").

the Trustee, […] PPT, on behalf of the Trusts and *may be distributed only based on the exercise of discretion of the Plan Administrator, Penn-Mont Benefit Services, Inc.*. (Trust§ 4.6; Master Plan Document§ 7.05(f); <u>see also</u> Master Plan Document§ 5.06.)."[152] "Assuming that a participating employee remained eligible for benefits until death - and the employer, employee and claimant passed other elements of the trust- the Master Plan document still gives the Plan Administrator the right to 'determine a Beneficiary to whom payment shall be made.'"[153]

The REAL VEBA made no guarantees—for benefits, for a certain amount of benefits, or even to pay benefits to beneficiaries. From all that has been provided, Mr. Koresko cannot genuinely claim that the REAL VEBA provided a fixed welfare benefit to its participants, in compliance with § 1.419A(f)(6)–1 (c)(4).

## 2. Count VI: The REAL VEBA Scheme Used Non-Standard Triggers for Paying Benefits

The Government argues that the REAL VEBA arrangement used non-standard triggers for paying benefits, disqualifying it from TOME exemption under I.R.C. § 416A(f)(6). Mr. Koresko presented the REAL VEBA arrangement as a TOME though he knew or should have known it would not qualify as a TOME. Therefore, the Government claims Mr. Koresko made false or fraudulent statements about the REAL VEBA under § 6700 and is liable for civil penalties imposed under this section.

---

[152] <u>In re: REAL VEBA Trust</u>, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 9, ¶ 42 (emphasis added).

[153] Doc. No. 29, Ex. 2, at 22 (<u>Perez v. Koresko, et al.</u>, 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief)(quoting Master Plan, § 5.06(a)).

Count V pertains to 26 C.F.R. § 1.419A(f)(6)–1 (c)(6).  Section  1.419A(f)(6)–1 (c)(6)  outlines another characteristic which  would indicate the plan is not a 10 or more employer plan described in section 419A(f)(6). This provision explains that plans with non-standard triggers are not considered to be TOMEs. Section 1.419A(f)(6)–1 (c)(6). Non-standard triggers allow benefits or other amounts to be "paid, distributed, transferred, or otherwise provided from a fund that is part of the plan by reason of any event other than the illness, personal injury, or death of an employee or family member, or the employee's involuntary separation from employment." Id. One example of a non-standard trigger occurs when a plan "provides for the payment of benefits or the distribution of an insurance contract to an employer's employees on the occasion of the employer's withdrawal from the plan." Id.

Mr. Koresko has made clear that "the illness, personal injury, or death of an employee or family member, or the employee's involuntary separation from employment" will not necessarily trigger payment under the REAL VEBA. Mr. Koresko has admitted that Penn-Mont, as administrator and Plan Committee, enjoyed "tremendous control over benefits: the source of benefits, to whom payable, the mechanics of payment; and execution of the claim procedure."[154] "No one in a discretionary trust qualifies for a benefit *unless the Trustee exercises its discretion in the claimant's favor*. It is this discretion conferred upon REAL VEBA's Trustee that prevents any beneficiary from having any measurable ownership interest in the assets held in the REAL VEBA Trust,

---

[154] DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 20, ¶ 42 (citing Trust Document Section 5.02: Limitations).

including the insurance policies."[155] The Trustee, being a directed Trustee, is "subject to the direction of Penn-Mont in all material respects."[156]

Mr. Koresko has described Penn-Mont's discretion over the benefit claims process as "*sole* and *absolute*."[157] "The Administrator [Penn-Mont] has to exercise a power of appointment in order for anything to become payable; and as a matter of historical, typical property law, the privilege to ask for a benefit is only a contingent expectancy known in trust law as an executory use subject to a contingent power of appointment. Because it can be cut off by the holder of the fee interest, the trustee or administrator acting as the boss of trustees, or by failure of an employer to make sufficient contributions, and it is not payable until the moment of exchange of the release for the amount determined to be payable, there is no prior beneficial interest."[158] "[T]here is no beneficial interest unless the documents are interpreted by the administrator to recognize a beneficial interest, and that could be cut off by something technical or as simple as a disputed claim to eligibility (§10.06) or a prohibited alienation, assignment, transfer or

---

[155] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 25-26, ¶ 117 (emphasis added).

[156] DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 13, ¶ 17 (citing to Bonney's Affidavit and trustee documents).

[157] DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 2, ¶ 33 (emphasis added)("Paticipants [sic] have only a contingent, unsecured claims against the trust estate to receive possible benefits, if they are claimed in the future; and PennMont, in its sole and absolute discretion, determines a payee from a list of possible payees in Article 6, determines under Article 5 that a benefit is due, determines the amount of any benefit under Article 5 and 8, determines that an insurance contract sufficient to indemnify the trust actually exists under Article 8, and determines that the employer is still a participating employer associated with the trusts pursuant to Article 5 and 9.").

[158] Doc. No. 29, Ex. 2, at 42-43 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief).

anticipation related to of any portion of a payment or interest in the Trust or to be received by virtue of the Trust (see, e.g. §10.04)."[159]

   "To determine if claimants satisfy the prerequisites for payment, PMBS must evaluate each claim as follows to determine eligibility for a benefit:

   a. Was the decedent a participant- *i.e.*, was he an employee as defined by the Master Plan Document who met the eligibility and participation requirements in Article 3 of the Master Plan Document?

   b. Was the decedent's employer entitled to utilize the trust, or had it terminated its participation or any benefits? (See Master Plan Document§ 9.04; Adoption Agreement.)

   c. Did the employee commit any act disqualifying him from benefits? (See Master Plan Document§§ 5.10, 9.04.)

   d. Did any insurance company deny payment of the Plan Administrator's death claim on account of some action of the participant or employer? (See Master Plan Document§ 5.04.)

   e. Was there any question about the validity of the beneficiary nomination, or would PMBS be required to investigate any other possible claimants? (See Master Plan Document § 5.06.)

   f. Could PMBS determine a 'Benefit Base,' taking into account any required modifications of, e.g., includable compensation? (See Master Plan Document § 5.03(a); Adoption Agreement § 5.b.)

   g. Did a policy of insurance exist for a benefit intended to be insured?

   h. After PMBS determined the Benefit Base, and applied the applicable multiple to it, did the employee accept the offer of Penn-Mont Benefit Services, Inc. for payment of the benefit in 'a series of monthly payments not to exceed 120 or as otherwise provided in an annuity purchased by the plan or as agreed by the Beneficiary and the Administrator, in the

---

[159] Doc. No. 29, Ex. 2, at 30 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief). See also DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at ¶ 35 ("Plan beneficiaries have only potential expectancy interests subject to the discretion of the Trustee, Administrator, or attorney in fact.") and ¶¶ 36-37.

Administrator's sole and absolute discretion'? (See Master Plan Document § 5.02(a).)."[160]

"Assuming a valid election by the beneficiary determined by PMBS [Penn-Mont Benefit Services, Inc.] or agreement between the Plan Administrator and beneficiary, the beneficiary [then] executes a release in favor of PMBS in exchange for a payment of benefits. (See Master Plan Document §§ 5.06, 10.11.)]."[161]

The real trigger is whether Penn-Mont thinks a claim for benefits should be paid.[162] And in that sense, the REAL VEBA makes no guarantees when benefits will be paid, if they will be paid at all. From all that have been provided, Mr. Koresko cannot

---

[160] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 15-16, ¶ 65. See also In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at Ex. B (Health and Welfare Plan Document § 5.06(c))("The Plan Committee shall, within 90 days from the date a Plan benefit becomes payable *as determined by the Plan Committee…*" (emphasis added)); DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at ¶ 34 and at ¶ 43 ("[T]here is no vesting unless a triggering event has already occurred: i.e. there has been a DEATH, there has been a claim, and it has been resolved before an employers [sic] "termination" out of the plan." (emphasis in original)).

[161] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 16, ¶ 66. See also Doc. No. 29, Ex. 2, at 4 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief)("[T]he governing documents prevent vesting of any accrued benefit, [...] and grant the Administrator discretion to refrain from payment of any amount *until it a claimant* has satisfied all contingencies and executes a release." (emphasis added)); Id. at 42 ("It does not follow that, because a trust holds assets for the potential benefit of a claimant [*who is not entitled to anything until the Administrator is satisfied that each and every condition precedent is satisfied, including the execution of a release in form acceptable to the Administrator*], the claimant had become something more. Under typical laws of property, even the holder of a contingent remainder cannot be cut off by the holder of the fee interest, and he thus has a beneficial ownership interest, albeit remote.")(brackets in original, emphasis added)); DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at 80, ¶ 45 ("The documents clearly say that no benefit is ever vested, and none is payable until the procurement and surrender of receipt and release.").

[162] See In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 25, ¶ 115 ("The impact of these terms is clear: Any potential beneficiaries' receipt of the defined death benefit obligations remains uncertain up until the point that the death benefits otherwise become payable to a claimant following an administrative process (described above) and the exercise of the Plan Administrator's discretion.").

See also DOL (09-cv-988), Doc. No. 429 (July 8, 2013 Hr'g Tr.; Ex. 5 to the United States' motion), Tr. 29-31 (discussing beneficiaries who were not paid for arbitrary reasons.); DOL (09-cv-988), Doc. No. 137 (Koresko's Proposed Findings of Fact; Ex. 6 to the United States' motion), at ¶ 29 ("…PennMont exercises absolute discretion in assigning payout determination.").

genuinely claim that the REAL VEBA provided a fixed welfare benefit to its participants, in compliance with § 1.419A(f)(6)–1 (c)(6).

### c.  The Statements Pertained to "Material Matters"

"Material matters are those which would have a substantial impact on the decision-making process of a reasonably prudent investor and include matters relevant to the availability of a tax benefit." U.S. v. Campbell, 897 F.2d 1317, 1320 (5th Cir. 1990)(citing 1982 U.S.Code Cong. & Ad.News at 1015; United States v. Buttorff, 761 F.2d 1056 (5th Cir.1985)). Statements prohibited by § 6700 include both "statements directly addressing the availability of tax benefits and those concerning factual matters that are relevant to the availability of tax benefits." Campbell, 897 F.2d at 1320.

Given that the presence of one of these characteristics can render a TOME invalid, thereby disallowing certain tax benefits to participants in the VEBA, these sections clearly pertain to "material matters" related to the REAL VEBA. I will consider the fourth element of § 6700(a)(2)(A) to be proven.

### d.  Mr. Koresko Knew or Should Have Known Those Statements Were False

Federal courts which have considered whether a taxpayer had the appropriate scienter under section 6700 have looked at the following factors: 1) the extent of the promoter's reliance upon knowledgeable professionals; 2) the promoter's level of sophistication and education; and 3) the promoter's familiarity with tax matters.[163] See

---

[163] Mr. Koresko simply claims ignorance in disputing this point. Despite his lengthy history of section 419 and 419A, he claims that the "new regulations [from 2003] made the law governing REAL VEBA almost impossible to decipher." Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund). However, Mr. Koresko

U.S. v. Gleason, 432 F.3d 678, 683 (6th Cir. 2005); U.S. v. Estate Preservation Services, 202 F.3d 1093, 1103 (9th Cir. 2000). See also United States v. Kaun, 827 F.2d 1144, 1149 (7th Cir.1987).

There is no indication that Mr. Koresko relied on any other tax professionals in making statements related to the REAL VEBA. Mr. Koresko is himself a trained attorney and certified public accountant. [164] He is a "recognized expert in the fields of estate planning, benefits planning, and taxation" who "has provided advice and comments to committees of the U.S. Congress, the U.S. Treasury Department, the U.S. Department of Labor, and the U.S. Department of Justice regarding important tax issues."[165] He has appeared before the U.S. Tax Court as an expert witness.[166] He has authored chapters on estate planning and journal articles on employee benefits and tax law.[167]

---

[164] goes no further in explaining why these regulations, which further established a viewpoint held by the IRS for ten years, were indecipherable. Mr. Koresko also admits that he prepared the REAL VEBA documents knowing of the IRS's adverse litigation position to them, first outlined in Notice 95-34. See DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 3, ¶¶ 19-23. He states, under oath, that "ALL DOCUMENTS prepared in connection with REAL VEBA and DVL VEBA were prepared under threat of imminent litigation." DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 3, ¶ 24 (emphasis in original). This feigned ignorance is not enough to create a dispute or undercut his admitted extensive knowledge in tax law.

[164] Perez v. Koresko, et al., 09-cv-988 (E.D. Pa. March 6, 2009) (McLaughlin, J.)(hereinafter, "DOL (09-cv-988)"), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 1, ¶ 1; DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶ 1.

[165] Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund).

[166] Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund).

[167] Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund).

By his own admissions, Mr. Koresko was aware that the REAL VEBA must comply with § 419A(f)(6) in order to be considered a TOME.[168] He knew that if the REAL VEBA, as a TOME, satisfied the requirements of that section of the IRC the restrictions on deductions for amounts contributed to the REAL VEBA were no longer limited by IRC §§ 419 and 419A do not apply.[169] Mr. Koresko recognized that Treas. Reg. § 1.419A(f)(6)-1(c) identified certain characteristics that would disqualify an arrangement purporting to operate as a TOME plan under I.R.C. § 419A(f)(6).[170] He knew that a plan which exhibits one of these characteristics would not be considered a TOME.[171] In light of Mr. Koresko's educational background and his own admissions, Mr.

---

[168] See In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion) at 7, ¶ 32 ("In general, deductions are limited to the cost of providing current benefits in the current year (IRC § 419) plus limited prefunding of benefits to be provided in future years (IRC § 419A)."). He also recognizes the tax implications of the "VEBA" section of the Code, IRC § 501(c)(9). See id. at 5-7.

[169] See In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion) at 7, ¶ 33 ("Congress left an exception in the law for multiple-employer VEBAs. Under IRC § 419A(f)(6), if 'ten or more employers' join a single plan, and the plan otherwise satisfies the requirements of that section, the restrictions on deductions for amounts contributed to welfare plans imposed by IRC §§ 419 and 419A do not apply.").

[170] In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 8, ¶ 39 ("The IRS regulations also list five characteristics of a plan that is not a TOME Plan: a. The plan assets are separately accounted for among employers;  b. The plan does not provide for a fixed welfare benefit, for a fixed coverage period, for a fixed price; c. The plan charges an unreasonably high price for the covered risk; d. The amount charged under the plan is the not the same for all employers, except for price differences that reflect the differences in current risk or rating factors that are commonly taken into account in manual rates used by insurers (such as current age, gender, geographic locale, number of covered dependents, and benefit terms); and e. The plan uses nonstandard triggers for paying benefits or other amounts from the plan *(i.e.,* other than for illness, personal injury, death or involuntary termination of employment).").

[171] See In re: REAL VEBA Trust, No. 13–ap-16440, Doc. No. 1 (Koresko's Verified Complaint; Ex. 1 to the United States' motion), at 9, ¶ 40 ("If a plan exhibits even one of these characteristics, the IRS will view it as not being a TOME Plan, unless the plan can otherwise establish to the Commissioner's satisfaction that the plan satisfies IRC § 419A(f)(6).").

Koresko knew or had reason to know that the REAL VEBA was not a TOME and any statements he made to this effect would be false.[172]

### e.  Mr. Koresko's Participation in the REAL VEBA

In order to establish the final element of a violation under § 6700(a), the Government must show that Mr. Koresko "organized or participated in the sale of certain investment plans or arrangements." Mr. Koresko contests this point, claiming that he was not a "promoter" within the meaning of the statute: he did not "materially advise or organize REAL VEBA," "make direct contact with the employer-participants, place advertisements, or make solicitations."[173] Mr. Koresko claims that his only role in the REAL VEBA was to provide "legal advice on an hourly basis to Penn-Mont."[174] Instead, it was "Penn-Mont" that performed all the administration of REAL VEBA and "organized" the REAL VEBA.[175] Koresko claims he was only an officer of Penn-

---

[172] See U.S. v. Estate Preservation Services, 202 F.3d 1093, 1105-06 (9th Cir. 2000)(finding that the director of a foundation promoting tax shelters had appropriate scienter given his C.P.A. and sixteen years of tax experience at the time he created the foundation and fraudulent documents); U.S. v. Gleason, 432 F.3d 678, 683 (6th Cir. 2005)(finding scienter because defendant was a "national recognized tax expert" with fifteen years of experience). Compare Weir v. United States, 716 F.Supp. 574, 580 (N.D. Ala.1989)(finding taxpayer did not have appropriate scienter when he relied upon legal opinions by experts in the field and didn't have tax experience himself).

[173] See Compl., Doc. No. 1 at ¶ 10(c).

[174] Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund). I note that this statement directly contradicts Mr. Koresko's own words in his appellate brief regarding the DOL case: "Evidence disclosed that Mr. Koresko's primary function was to speake [sic] at continuing education seminars, represent the Trusts in legal matters, and deal with political efforts to prevent IRS from destroying the arrangement, and in the early 2000s, to write and advocate federal legislative initiatives." Doc. No. 29, Ex. 2, at 7 (Perez v. Koresko, et al., 13-3827 (3d. Cir. Sept. 20, 2013), Doc. No. 609507 (Koresko's Appellate Brief)).

[175] Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund).

Mont.[176]  He allegedly "did not create Penn-Mont as his alter-ego to avoid the rules of Section 6700…"[177]

Mr. Koresko would like me to believe that he has done nothing to organize or promote the REAL VEBA. Yet, *in his opposition to this motion for summary judgment*, he argues: "There is no question John Koresko wrote the Master Trust and Master plan of REAL VEBA…" Plaintiff's Statement of Facts, Doc. No. 38-2 at ¶ 226.[178] The statements which identify the REAL VEBA as a TOME, though it does not operate at such, are contained in the Master Trust and Master Plan. Mr. Koresko clearly "organized and participated in the sale" of the REAL VEBA arrangement. This final element is met.

### f.  Mr. Koresko's Arguments Against Summary Judgment[179]

Mr. Koresko offers several reasons why summary judgement should not be entered.[180] Much of what he argues is either irrelevant, confusing, or difficult to follow.[181] I glean two main legal arguments from what Mr. Koresko has offered.

---

[176] Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund).

[177] Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund).

[178] See also Perez v. Koresko, et al., 09-cv-988 (E.D. Pa. March 6, 2009)(McLaughlin, J.)(hereinafter, "DOL (09-cv-988)"), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 1, ¶ 1; DOL (09-cv-988), Doc. No. 166-1 (August 13, 2009 Affidavit of John Koresko; Ex. 4 to the United States' motion), at 1, ¶¶ 14, 20.

[179] The Government argues that I should not consider Mr. Koresko's response because it was untimely. Mr. Koresko's response with due September 2, 2014. This deadline was extended twice. Mr. Koresko filed his response on September 3, 2014, one day late. Technically, his response is untimely. However, in the interest of fairness, I have considered the response in making my decision. I see little prejudice to the Government in doing so. If Mr. Koresko does not comply with filing deadlines in the future, I may not be as forgiving. He is a trained attorney who is well-aware of the importance of following court orders.

[180] He also offered a plethora of documents. He claims that the tax penalties are a conspiracy by political adversaries, who did not agree with his views of proposed IRS legislature in the late 1990s, to "destroy him professionally and financially." He offers "thousands of pages of documents from the years 1995 to the present that demonstrate a bureaucratic conspiracy, evidence that IRS chose not to litigate with Mr. Koresko on account of his

First, he calls into question the calculation of the penalty, claiming that it is in fact a "double tax." He appears to be claiming that the IRS is penalizing both Penn-Mont and himself for the same false statements. Under § 6700(a)(2)(B), the promoter "shall pay, with respect to each activity described in paragraph (1), a penalty equal to the $1,000 or, if the person establishes that it is lesser, 100 percent of the gross income derived (or to be derived) by such person from such activity."

This argument has not been addressed by many courts. It may have some merit. See In re MDL-731 Tax Refund Litigation of Organizers and Promoters of Investment Plans Involving Book Properties Leasing Barrister Associates, et al., 989 F.2d 1290, 1304-05 (2d Cir. 1993)(affirming lower court's decision that penalty imposed on both partners and the partnership itself constituted a "double tax); In re Tax Refund Litigation, 766 F.Supp. 1248 (E.D. N.Y. 1991).  As Mr. Koresko has argued, "Penn-Mont is a separate legal entity." Castellano (03-cv-6903), Doc. 249-11 (Statement of Undisputed Facts in Support of REAL VEBA Trust for MSJ; Ex. 7 to United States' motion), at 11, ¶ 29. Presumably, if it were a separate promoter, it could have separate liability. However, if it is simply an alter-ego for Mr. Koresko (which the Government at times implies),

allegedly false statements during the 1990s, and a collection of legislative documents demonstrating without doubt that several powerful members of Congress and others in the industry shared Mr. Koresko's criticisms of the IRS regulations that IRS submitted as 'false statements.'" I cannot see the relevance of these documents in this litigation.

Mr. Koresko also claims he is entitled to amend his complaint to add a claim for relief under the American with Disabilities Act (ADA). He has not provided a basis or legal authority for now making this request for an amendment buried in his opposition brief nor any evidence that he is entitled to relief under the ADA. This request is denied. He also asks to re-assert claims I have already striken without any basis for doing so (i.e. new controlling law, etc.). That request, again buried in his brief, fails to meet the standard for reconsideration.

[181] Mr. Koresko makes arguments about a penalty imposed on him under § 6708. That is a separate matter already addressed in separate litigation. It is irrelevant to this case.

separate liability may be a "double tax." The IRS has not put forth evidence or an

explanation of how it has calculated the $386,000 penalty against Koresko and Penn-

Mont.[182] For this reason, I will decline to address this argument at this time. My decision

to grant summary judgment in favor of the Government on Counts V and VI pertains

only to the fact that Mr. Koresko is subject to liability under § 6700 on these issues. It

does not establish the amount of liability he owes.

Second, Mr. Koresko implicitly argues that he was given no notice that the final

rule would change the tax status of the REAL VEBA. This argument is contradicted both

by the history of the regulations and by Mr. Koresko's own statements.  Before

promulgating the final regulations, the IRS first offered guidance on when a plan

constituted a TOME under Section 419A(f)(6) in Notice 95-34. The IRS then put out

Notice 2000-15 which categorized the transactions in Notice 95-34 as "listed

transactions" on February 28, 2000. See IRS Notice 2000-15, I.R.B. 2000-12 (Feb. 28,

2000).[183] As the plaintiff points out in his response and attached exhibits, proposed

---

[182] Koresko seems to think that this penalty was levied on him because of a 2002 law review article he wrote and was calculated by multiplying the $1000 cap fine by 386 (presumably the number of people to whom he made false statements). See Plaintiff's Exhibit, Doc. No. 38-7 (Email to Congressman Jim Gerlach Requesting Congressional Hearings on IRS abuse of power regarding § 6700 enforcement). However, he also admits that the penalty amount is a function of the alleged false statements pertaining to 386 returns. Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund).

[183] Koresko notes that in 1995 the IRS issued Notice 95-34 which identified four reasons why an arrangement might not satisfy Section 419A(f)(6): 1) arrangements may actually be providing deferred compensation, 2) arrangements may, in fact, be separate plans maintained for each employer, 3) arrangements may be "experience rated" if they operate as such for individual employers, or employer contributions are prepaid expenses that are nondeductible under other sections of the Code. Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund). Koresko recognized that this notice indicated "welfare benefit arrangements like REAL VEBA are actually deferred compensation arrangements." Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund). However, he argued that the Notice was non-binding nor deserving of deference and/or that the IRS did not have the authority to interpret the Code as it did. Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund). While Mr. Koresko's point may be valid, in terms of how-binding the Notice may be, his tax penalty was

regulations on TOME and VEBA plans were being discussed for several years before the

final rule went into place. <u>See</u> Congressional Letters, Doc. 38-4 (Jul. 6, 1999, Dec. 10,

1999). While it is true that the substantive law did not change until 2003 when the final

regulations were promulgated using the Notice and Comment rulemaking process under

the Administrative Procedures Act.[184] However, Mr. Koresko had been on notice for

years about how the IRS planned to define a TOME under Section 416(f)(6).[185] <u>See</u>

---

not assessed during this timeframe. Instead, it was assessed for the 2003 tax year, when the final regulations were in effect. Koresko recognized that the Final Regulations were effective for contributions paid or incurred on or after July 11, 2002. Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund). <u>See also</u> Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund)("REAL VEBA responded to the Final Regulations by no longer accepting contributions.").

[184] <u>See</u> DOL (09-cv-988), Doc. No. 429 (July 8, 2013 Hr'g Tr.; Ex. 5 to the United States' motion), Tr. 127 ("THE COURT: Why didn't you comply with my order? MR. KORESKO: So that -- so that 278 people would not end up getting audited and taxed oppressively by the Internal Revenue Service, pursuant to some propagandistic regulations that they presently made up and that are presently the subject of an extraordinarily important case involving one of the Welfare Plan participants, by the name of David Crow.").

[185] Koresko also argues that the plan's identical predecessor was never cited for 419 violations in the seven years prior. Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund). Yet, Koresko himself recognizes that the law changed in 2003 and that the REAL VEBA was changed to conform with that law. Any sort of "estoppel" argument, therefore, would be inappropriate.

Koresko argues that the Third Circuit did not explain what was required of VEBAs in its 2002 case involving an underpayment by two medical VEBAs. <u>See</u> Plaintiff's Statement of Facts, Doc. 38-2 at ¶ 232 ("The court in <u>Neonatology Assocs., P.A. v. Comm'r</u>, 299 F.3d 221, 224-25 (3d Cir. 2002) did not 'explain VEBA arrangements and their attendant requirements.'").

This argument fails. Koresko specifically points out that REAL VEBA was amended to comply with the final regulations under Section 419A(f)(6) promulgated (effective July 2002). Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund). Mr. Koresko admits that he prepared the REAL VEBA documents knowing of the IRS's adverse litigation position to them, first outlined in Notice 95-34. See DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 3, ¶¶ 19-23. He states, under oath, that "ALL DOCUMENTS prepared in connection with REAL VEBA and DVL VEBA were prepared under threat of imminent litigation." DOL (09-cv-988), Doc. No. 78-7 (May 4, 2004 Affidavit of John Koresko; Ex. 3 to the United States' motion), at 3, ¶ 24 (emphasis in original).

Compl., Doc. No. 1, Ex. B (Koresko Statement Attached to Claim for Refund). This argument is without merit.[186]

## VI.    CONCLUSION

For the foregoing reasons, I will grant judgment in favor of the Government, and against Mr. Koresko, on Counts V and VI of the Government's counterclaim on the issue of liability. I will deny the Government's motion without prejudice regarding entry of judgment on the issue of damages.

An appropriate Order follows.

---

[186] Mr. Koresko also implies that the IRS's interpretations of Section 419A(f)(6), issued prior to the final rule, held no weight because no court had ruled on their validity. This, in fact, is not true. See Benistar Employer Service Trust Co. v. U.S., No. 05-5679, 184 Fed.Appx. 93, 96 (2d Cir. 2006)("Benistar erroneously argues that there could be no intended violation of the Code with respect to welfare benefit plans prior to the issuance of Regulations in 2003, see 26 C.F.R. § 1.419A(f)(6)-1(c), as prior to that issuance, one could not know whether a plan met the carve out exception's criteria. The Tax Court's decision in Booth v. Commissioner, 108 T.C. 524, 1997 WL 328581 (1997)-a case cited by Benistar-is contrary: The IRS was prosecuting plans prior to the adoption of Regulations, and the fact that Regulations were eventually adopted to clarify the IRS's position does not mean that there could be no violation of the Code prior to the clarification.").